

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-6-2008

# Holland v. Horn

Precedential or Non-Precedential: Precedential

Docket No. 01-9001

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Holland v. Horn" (2008). *2008 Decisions.* Paper 1353.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1353

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 01-9001 and 01-9002

WILLIAM HOLLAND,

Appellant in No. 01-9001

v.

MARTIN HORN, COMMISSIONER, PENNSYLVANIA
DEPARTMENT OF CORRECTIONS;
PHILIP L. JOHNSON, SUPERINTENDENT OF THE
STATE CORRECTIONAL INSTITUTION,
GREENE COUNTY; JOSEPH P. MAZURKIEWICZ,
SUPERINTENDENT OF THE STATE
CORRECTIONAL INSTITUTION AT ROCKVIEW

WILLIAM HOLLAND,

v.

MARTIN HORN, COMMISSIONER, PENNSYLVANIA
DEPARTMENT OF CORRECTIONS;
PHILIP L. JOHNSON, SUPERINTENDENT OF THE
STATE CORRECTIONAL INSTITUTION,
GREENE COUNTY; JOSEPH P. MAZURKIEWICZ,
SUPERINTENDENT OF THE STATE
CORRECTIONAL INSTITUTION AT ROCKVIEW,

Appellants in No. 01-9002

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 99-02551)

1

Honorable Franklin S. VanAntwerpen, District Judge

Argued December 18, 2007

BEFORE: CHAGARES, GREENBERG,
and COWEN, <u>Circuit</u> <u>Judges</u>

(Filed: March 6, 2008)

Ellen Berkowitz
Matthew C. Lawry
David W. Wycoff (argued)
Maureen Kearny Rowley
Chief Public Defender
Defender Association of
Philadelphia
Federal Capital Habeas Corpus Unit
The Curtis Center
Independence Square West
Philadelphia, PA 19106

   <u>Attorneys for Appellant in No. 01-9001</u>

David Curtis Glebe (argued)
Assistant District Attorney
Thomas W. Dolgenos
Chief, Federal Litigation
Ronald Eisenberg
Deputy, Law Division
Arnold H. Gordon
First Assistant District Attorney
Lynne Abraham
District Attorney
Three South Penn Square
Philadelphia, PA 19107-3499

   <u>Attorneys for Appellants in No. 01-9002</u>

OPINION OF THE COURT
––––––––––

GREENBERG, Circuit Judge.

I.  INTRODUCTION

This matter comes on before this Court on an appeal and cross-appeal from a final order entered in the District Court on April 25, 2001, in this habeas corpus action under 28 U.S.C. § 2254 following extensive proceedings in the Pennsylvania state courts leading to appellant William Holland's conviction at a jury trial bifurcated between guilt and penalty phases on, among other charges, first degree murder.  Following Holland's conviction the jury in the second phase of the trial imposed the death penalty.  Subsequently, after the Pennsylvania Supreme Court affirmed Holland's conviction and sentence, he filed a state post-conviction relief application but the trial court denied the petition and the Pennsylvania Supreme Court affirmed the denial.  Consequently, we hardly write on a blank slate as the Supreme Court set forth the background of the matter in its opinions.  Commonwealth v. Holland, 543 A.2d 1068 (Pa. 1988); Commonwealth v. Holland, 727 A.2d 563 (Pa. 1999).  Furthermore, the District Court reiterated the background of the case in an exceptionally comprehensive opinion in which it granted Holland relief with respect to the penalty phase of the bifurcated state proceedings but denied him relief with respect to the guilt phase and thus from the conviction for the murder.  Holland v. Horn, 150 F. Supp. 2d 706 (E.D. Pa. 2001) ("Holland").[1]  Holland appeals from the denial of relief with

––––––––––––

[1]We are not mentioning Holland's convictions for the other offenses in this opinion again.  But we do point out that he acknowledges that:  (1) "[t]here was overwhelming evidence that [he] was the assailant"; (2) he gave two very detailed voluntary confessions that he acknowledges were not "false"; and (3) "there was strong evidence of his presence at the scene of the offense and consciousness of guilt."  Appellant's br. at 2.  Moreover, he recognizes that "[g]iven the overwhelming evidence that [he] was

3

respect to his first degree murder conviction and the Commonwealth respondents cross-appeal from the granting of relief from the imposition of the death penalty.

In view of the foregoing opinions we need not repeat the background of the case at great length. Rather, it is sufficient to note that after the District Court entered its order Holland appealed, and, on his application, we granted a certificate of appealability raising the following questions:

> whether: the District Court erred in finding various of [Holland's] claims procedurally defaulted; [Holland] was denied his right of an expert at the guilt phase; the sentencing court's instructions violated Mills [v. Maryland, 486 U.S. 367, 108 S.Ct. 1860 (1988),] and improperly told the jury to count rather than weigh aggravating and mitigating factors; the prosecutors improperly commented on [Holland's] silence at sentencing; and [   ] counsel was ineffective at the guilt and penalty phase [of the state trial court's proceedings].

App. at 99. The Commonwealth respondents did not need a certificate of appealability to proceed with their appeal. See Hardcastle v. Horn, 368 F.3d 246, 253 (3d Cir. 2004).

## II. JURISDICTION AND STANDARD OF REVIEW

---

the assailant . . . [his] 'mental condition was his only viable defense' at [the] guilt phase and viable 'mitigation for sentencing purposes.'" Id. at 4 (quoting Holland, 150 F. Supp. 2d at 755-56). In the circumstances, even though Holland challenges aspects of both phases of the state proceedings, it is not surprising that the most substantial issue on this appeal concerns the imposition of the death penalty on the first degree murder conviction.

4

The District Court had jurisdiction under 28 U.S.C. §§ 2241(a) and 2254(a) and we have jurisdiction under 28 U.S.C. §§ 1291 and 2253. See Washington v. Sobina, 509 F.3d 613, 618-19 (3d Cir. 2007). Inasmuch as the District Court did not conduct an evidentiary hearing our review of its order is plenary. See Jacobs v. Horn, 395 F.3d 92, 99 (3d Cir. 2005). The District Court used the applicable standards of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, and thus we need not make further reference to those standards.

## III. DISCUSSION

### (a) Procedural Default and Exhaustion of Remedies

After our review of the parties' thorough briefs and entertainment of their oral arguments we are in agreement with the result that the District Court reached and largely, though not entirely, are in agreement with its reasoning. Therefore we will affirm the District Court's order granting habeas corpus relief from the imposition of the death penalty but otherwise denying Holland relief for substantially the reasons that it set forth. We, however, disagree with the District Court's disposition of a procedural default question principally concerning the treatment of a claim that Holland advances under Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087 (1985). Ake addressed the need for the availability to a defendant of a psychiatrist to whom he will have access if his sanity will be a significant factor at the trial. The District Court held that Holland procedurally defaulted his Ake claim but that his appellate attorney was ineffective for not raising an Ake issue on direct appeal and that Holland satisfied the cause and actual prejudice standard permitting him to raise the Ake claim even though it was procedurally defaulted.

In Bronshtein v. Horn we explained that "[t]he procedural default doctrine precludes a federal habeas court from 'review[ing] a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the

5

judgment.'" 404 F.3d 700, 707 (3d Cir. 2005) (quoting Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546, 2253-54 (1991)). But adequacy with respect to procedural default is not synonymous with, though it may be related to, the opportunity of a petitioner to have asserted his claims in the state court. Rather, explaining adequacy negatively, we indicated in Bronshtein that "state procedural rules have been held to be inadequate if they are not 'firmly established and regularly followed' or if they are 'novel[ ]' and unforeseeable." Id. (quoting Ford v. Georgia, 498 U.S. 411, 424, 111 S.Ct. 850, 858 (1991), and NAACP v. Alabama ex. rel. Patterson, 357 U.S. 449, 457, 78 S.Ct. 1163, 1169 (1958)) (alteration in original) (citations omitted). Thus, as we indicated in Cabrera v. Barbo, before we decided Bronshtein, "a petitioner should be on notice of how to present his claims in the state courts if his failure to present them is to bar him from advancing them in a federal court." 175 F.3d 307, 313 (3d Cir. 1999).

The application of the procedural default doctrine works in tandem with the requirement that a petitioner exhaust his remedies in the state courts before making his federal claims in a federal court. Usually when a petitioner exhausts his remedies in the state courts and then files a federal habeas corpus petition the state courts will have rejected his federal claims on the merits. Nevertheless, a petitioner will have exhausted his state remedies even if the state court does not address his federal claims on the merits but, instead, rejects the claims on an independent and adequate state ground. See Cabrera, 175 F.3d at 312-13. If that happens the petitioner ordinarily will not obtain a decision by any court, federal or state, addressing his federal claims on the merits.

But there are limitations on when a procedural default can close the federal door to a petitioner for if a procedurally defaulted petitioner is able to "demonstrate cause for the default and actual prejudice as a result of the violation of federal law" he can obtain a federal court decision addressing his federal claims on the merits. Coleman, 501 U.S. at 750, 111 S.Ct. at 2565. A petitioner can establish cause for avoiding the procedural default bar when he demonstrates, among other

6

possible showings, that, as the District Court held was the case here, "the procedural default is the result of ineffective assistance of counsel . . . ." Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645 (1986). But even if a petitioner establishes cause for the procedural default, the showing that he must make to obtain relief that he suffered actual prejudice attributable to the ineffective assistance of counsel requires that the error of which he complains "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170, 102 S.Ct. 1584, 1596 (1982).

The District Court found that Holland defaulted certain of his claims, including his Ake claim, at the guilt phase of the proceedings, but also held that all of his claims relating to the guilt phase of the proceedings, defaulted or not, were meritless. We agree that all of Holland's guilt phase claims are meritless and, except for the Ake claim, we find no reason to comment on them as we cannot add to the District Court's painstaking analysis of those claims. Thus, we will not disturb the state court proceedings by granting Holland relief from his custody on the basis of his assertion that there was constitutional error at the guilt portion of his trial.

The District Court, however, did grant Holland relief under Ake from the imposition of the death penalty at the penalty phase of the proceedings. The Supreme Court held in Ake that due process of law requires "that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." 470 U.S. at 83, 105 S.Ct. at 1096. Moreover, under Ake this right requires that he has a competent psychiatrist available to assist him both at the guilt and sentencing phases of the state court proceedings. Id. at 84, 105 S.Ct. at 1097. Thus, we have explained that, under Ake, "when a capital defendant demonstrates that his mental condition is a significant factor at his sentencing phase, he is entitled to the assistance of a

7

psychiatrist . . . ." United States v. Roman, 121 F.3d 136, 144 (3d Cir. 1997) (internal quotation marks omitted).

Notwithstanding Ake, Holland's attorney before his trial did not seek an Ake appointment even though the Supreme Court decided Ake about four months before the trial. Nevertheless, the trial court, before both the guilt phase of the trial and the Supreme Court's opinion in Ake, with Holland's acquiescence appointed an impartial psychiatrist for the case. But the appointment of the impartial psychiatrist did not satisfy the Ake standard. Later, however, as the District Court explained, Holland filed an unsuccessful state "post-trial motion arguing that, under Ake, he was entitled to the benefit of a presentence report, psychiatric and a medical stud[y] during the penalty phase." Holland, 350 F. Supp. 2d at 746 (internal quotation marks omitted).

The District Court believed that Holland's Ake claim was procedurally defaulted with respect to both the guilt and penalty phases of the trial because, notwithstanding his post-trial motion seeking an Ake appointment, he did not raise a claim in the state courts that the absence of an Ake appointment denied him due process of law. It was appropriate for the District Court to draw this distinction between Holland seeking the expert's appointment and advancing his due process contention because there is a difference between asking a court to take certain action and asserting that its denial of the request offended constitutional principles. Moreover, by the time Holland filed his habeas corpus petition in this case in the District Court on January 14, 2000, the filing deadline for state court post-conviction relief applications barred him from seeking review of his Ake claim in those courts. In this regard 42 Pa. Cons. Stat. Ann. § 9545(b)(1) (West 1998), which was enacted on November 17, 1995, and became effective on January 16, 1996, provides that any petition under the Pennsylvania Post Conviction Relief Act ("PCRA") "shall be filed within one year of the date the judgment becomes final." There was, however, a one-year grace period for cases in which the judgment became final before the effective date of section 9545(b)(1) during which a first PCRA petition could be filed. See Commonwealth v. Peterkin, 722 A.2d 639, 641 (Pa.

8

1999).

The District Court held that Holland procedurally defaulted his Ake claim on January 16, 1996, when section 9545(b) became effective, by not asserting it in the state courts by that date. The court also observed that Holland could not file a second petition while his first petition was pending. Holland, 150 F. Supp. 2d at 724. Moreover, inasmuch as Holland's convictions became final on August 15, 1988, under section 9545(b)(1) Holland had until August 15, 1989, to file a second PCRA petition including his Ake claim, as the one-year grace period starting January 16, 1996, applied only to first petitions, and Holland could not meet the August 15, 1989 deadline.[2] Holland, as the District Court explained his contentions, argued in the District Court that, in light of when his convictions became final and when a section 9545(b) petition had to be filed, "[t]his set of circumstances . . . did not present sufficient notice to satisfy the adequate and independent state ground requirement of the procedural default doctrine." Holland, 150 F. Supp. 2d at 722.

Respondents answered that Holland could have advanced his Ake constitutional claim in the state courts by amending his state court post-conviction relief petition when the Legislature adopted section 9545(b)(1) to include his omitted and altered claims during the two-month window of opportunity between the enactment of section 9545(b) and its effective date. Holland, 150 F. Supp. 2d at 723. Thus, in their view, the time limits on a second PCRA petition did not matter as Holland could have asserted his constitutional claims in an amended first petition.

---

[2]We do not consider the possibility that there may have been earlier time limitations on post-conviction relief applications in Pennsylvania for until the Supreme Court of Pennsylvania rejected the relaxed waiver rule in Commonwealth v. Albrecht, 720 A.2d 693 (Pa. 1998), after the adoption of section 9545(b)(1), a subject and case that we discuss below, any such limitations would not have precluded Holland from seeking post-conviction relief in this capital punishment case.

The history of the case shows that respondents' argument chronologically was correct because: (1) Holland filed his state court post-conviction relief petition on October 6, 1994; (2) the petition was pending in the state PCRA court when the Legislature enacted section 9545(b) on November 17, 1995, and when that section became effective on January 16, 1996; (3) the PCRA trial court rejected the petition on September 16, 1996; and (4) it was pending on appeal until April 1, 1999, when the Pennsylvania Supreme Court affirmed the September 16, 1996 order rejecting the petition. Id. at 713. The District Court accepted respondents' argument, noting that Holland's post-conviction relief proceeding was "underway in state court during the sixty-day window of opportunity between the enactment and effective date of § 9545(b) . . . thereby making it relatively easy for [Holland] to amend his petition within the statutory restrictions." Id. at 724-25. Thus, the District Court found that Holland "had adequate opportunity to include his claims in his . . . petition for state collateral relief." Id. at 725.

The parties continue to disagree as to when Holland procedurally defaulted his opportunity to bring his Ake claim in the state courts - Holland contending that the date was August 15, 1989, one year after his conviction became final when the Supreme Court of the United States denied certiorari on his direct appeal from his convictions, thus implicitly taking the position that he had to assert the claim in a second PCRA petition, and respondents contending, as the District Court held, that Holland procedurally defaulted his unasserted claims when the section 9545(b)(1) time limitations became effective on January 16, 1996. We, however, need not linger on this point for, as we already have indicated, a petitioner will not default a claim in the state courts unless he does not follow a procedure that, as we explained in Bronshtein, is "firmly established and regularly followed."[3] 404 F.3d at 707.

---

[3]It is appropriate for us to note that although we have the benefit of Bronshtein the District Court was not so fortunate as we decided Bronshtein after it decided Holland.

It is clear there was not a firmly established and regularly followed Pennsylvania procedure governing the presentation of claims for relief from death sentences, even after section 9545(b) became effective on January 16, 1996, and, for reasons that we will explain, for more than 34 months thereafter which Holland should have understood as requiring him to bring his claim in the state courts within that 34-month period. Thus, even if Holland could have amended his PCRA proceeding to include an Ake claim by January 16, 1996, when section 9545(b) became effective, the availability of that opportunity did not mean that his failure to do so would have required a federal court to hold that if he brought this claim later and the Pennsylvania courts rejected it as untimely under section 9545(b)(1) the rejection would have been based on an independent and adequate state ground. After all, in Bronshtein we explained that even though section 9545(b) took effect on January 16, 1996, and "appears on its face to impose a one-year deadline in all cases except those falling within three categories (none of which is applicable here) . . . strict enforcement of the provision did not begin immediately." 404 F.3d at 708.[4]

We explained in Bronshtein that starting with Commonwealth v. McKenna, 383 A.2d 174 (Pa. 1978), the Supreme Court of Pennsylvania applied a "relaxed waiver rule" that a defendant did not waive a claim of constitutional error in a capital case by failing to preserve it. 404 F.3d at 708. The Supreme Court of Pennsylvania adhered to McKenna until November 23, 1998, when in Commonwealth v. Albrecht, more than 34 months after section 9545(b) became effective, it rejected the relaxed waiver rule which it acknowledged "virtually [had] eliminated any semblance of finality in capital cases . . . ." 720 A.2d 693, 700 (Pa. 1998). In Albrecht the court stated that "[t]he post-conviction appellate stage is an appropriate time to enforce the rules of waiver." Id. Then, one month later on December 21, 1998, that court in Peterkin, 722 A.2d 638, held that the section 9545(b)(1) one-year time bar

_____

[4]None of the three exceptions to the one-year deadline is present here either.

11

applies to capital cases and the relaxed waiver rule did not supercede it. Finally, on March 2, 1999, the court in Commonwealth v. Banks, 726 A.2d 374, 376 (Pa. 1999), held that the section 9545(b)(1) time limit is jurisdictional and not subject to judicial relaxation.

As we explained above, aside from the now expired one-year grace period, section 9545(b)(1) requires a petitioner to file his PCRA petition within one-year of his conviction becoming final. Bronshtein's conviction became final on October 20, 1997, when the Supreme Court of the United States denied certiorari on his direct appeal from his conviction. Thus, Bronshtein was required to file his PCRA petition by October 20, 1998, so that it would not be time-barred. Nevertheless, inasmuch as the Supreme Court of Pennsylvania did not decide Albrecht until November 23, 1998, we held that Bronshtein did not default his federal claims even though he filed his state court PCRA petition on June 9, 1999, more than one year after his conviction became final, and after the state courts rejected it as untimely under section 9545(b)(1). See Commonwealth v. Bronshtein, 752 A.2d 868 (Pa. 2000). We reached our result because the state procedural rule requiring a PCRA filing within one year of a judgment becoming final "was not firmly established and regularly followed at the time in question," i.e., October 20, 1998, when the time for Bronshtein's PCRA petition under section 9545(b) expired. Bronshtein, 404 F.3d at 709.[5] It therefore followed that the state court grounds for rejecting Bronshtein's claims could not be an adequate basis for rejecting his claims under the procedural default doctrine.[6]

[5]As we pointed out in Bronshtein it is possible that the unavailability of judicially created exceptions to the section 9545(b)(1) time limit did not become perfectly clear until the Supreme Court decided Banks on March 2, 1999, but that delay did not matter "because Bronshtein's one-year deadline expired before the earliest of the" opinions in Albrecht, Peterkin, and Banks. Bronshtein, 404 F.3d at 709.

[6]Bronshtein's June 9, 1999 petition was the second PCRA petition filed on his behalf. On December 3, 1997, the Center for

Legal Education, Advocacy and Defense Assistance filed a timely PCRA petition naming Bronshtein as the petitioner but at his request the state PCRA court dismissed the petition on January 26, 1999, and on appeal from that dismissal the Supreme Court upheld the dismissal on April 16, 1999. Commonwealth v. Bronshtein, 729 A.2d 1102, 1108 (Pa. 1999). Accordingly, the proceedings on the December 3, 1997 petition were pending in the PCRA court when the Supreme Court decided Albrecht and Peterkin. Thus, Bronshtein had an opportunity after the Supreme Court decided Albrecht and Peterkin to pursue the timely December 3, 1997 petition brought less than two months after his conviction became final and to seek to amend it to include any omitted claims. Instead, he successfully sought to have the petition dismissed. Nevertheless, we held that Bronshtein's habeas corpus petition was not barred on an independent and adequate state ground even though it should have been evident to Bronshtein after the Supreme Court decided Albrecht and Peterkin that by seeking the dismissal of the December 3, 1997 petition, in light of those two cases and section 9545(b)(1) he was risking losing his opportunity to bring timely claims at the time when state law compelled him to bring them.

It is the circumstance that the December 3, 1997 PCRA petition likely could have been amended after the Supreme Court decided Albrecht on November 23, 1998, and Peterkin on December 21, 1998, before the PCRA court dismissed the petition on January 26, 1999, to include the federal claims that makes that petition significant. After all, during the time that this first state petition was pending Bronshtein, in the language of Cabrera, surely was "on notice of how to present his claims in the state courts . . ." and almost certainly could have done so. 175 F.3d at 313. Therefore, we conceivably could have held in Bronshtein that the Supreme Court decision in Bronshtein, 752 A.2d 868, rejecting Bronshtein's June 9, 1999 PCRA petition as untimely after the Supreme Court decided Albrecht and Peterkin was predicated on an adequate state ground even though the court decided those two cases more than one year after Bronshtein's conviction became final. Nevertheless, we did not do so as we instead reached our

result that Bronshtein did not procedurally default his federal claims because the Supreme Court did not decide Albrecht until more than one year after Bronshtein's conviction became final and his section 9545(b)(1) filing period had expired.

We recognize that we did not seem to consider the possible effect of the December 3, 1997 petition when we concluded that Bronshtein did not default his federal claims, though we were well aware of it. But we still think that we should not deviate from what we did in Bronshtein and now reach the opposite result on the theory that Holland might have been able to amend his petition after Albrecht and Peterkin and, on that basis, hold here that the Pennsylvania courts dismissed Holland's claims on adequate state grounds under the procedural default doctrine. Inasmuch as the PCRA court dismissed Holland's PCRA petition on the merits on September 16, 1996, before the Supreme Court decided Albrecht, Holland could have amended his petition in response to Albrecht only on a remand from the Supreme Court to the PCRA court pursuant to Pa. R. App. P. 123 and 2501 so that he could have sought to file the amendment in that court. See Commonwealth v. Abu-Jamal, 833 A.2d 719, 722 n.1 (Pa. 2003). In adhering to the Bronshtein approach, we recognize that if Holland had been able to amend his petition after Albrecht the amendment would have related back to when he filed his petition on October 6, 1994. See Pa. R. Crim. P. 905(a); Commonwealth v. Flanagan, 854 A.2d 489, 499-500 (Pa. 2004); Commonwealth v. Padden, 783 A.2d 299, 308-09 (Pa. Super. Ct. 2001) (permitting petitioner to amend his timely petition to include new claims that were not raised within one year of petitioner's judgment of sentence becoming final). Rather, we follow the Bronshtein approach notwithstanding the possibility that Holland could have amended his PCRA petition after Albrecht, because we cannot distinguish in considering whether the state courts rejected the petitioner's claims on adequate state grounds between Holland's timely October 6, 1994 petition filed before the enactment of section 9545(b) which was pending at the time of the section's enactment and the timely section 9545(b) petition filed on Bronshtein's behalf after the enactment of section 9545(b). In any event, the possibility that Holland might

14

It might be thought that in our case inasmuch as Holland's convictions became final many years before the petitioner's conviction in <u>Bronshtein</u> became final the inadequacy of Holland's state court remedies is even more apparent than the inadequacy of the petitioner's remedies in <u>Bronshtein</u>. Moreover, as we noted in <u>Bronshstein</u>, 404 F.3d at 709-10, the Supreme Court of Pennsylvania did not adopt a transitional rule preserving claims from extinction after it abolished the relaxed waiver rule in <u>Albrecht</u> and thus Holland, like Bronshtein, did not have the advantage of a grace period to file his PCRA petition after the court released its opinion in <u>Albrecht</u>.[7] But because Holland, unlike Bronshtein, filed his PCRA petition before the adoption of the section 9545(b)(1) time limitation and his petition was pending in the PCRA trial court both when the Legislature adopted that section and when it became effective two months later, there is a circumstance here from which it could be concluded that Holland received notice to advance his constitutional claims in a timely way that Bronshtein did not have so that we should reach a different result here than

have been able to secure a remand of his PCRA appeal to the PCRA court and then secure an amendment of his petition in that court surely does not somehow mean that the PCRA court when it dismissed Holland's petition before <u>Albrecht</u> acted on the basis of firmly established and regularly followed state grounds.

[7]In a similar situation Pennsylvania provided with respect to first PCRA petitions in cases of final judgments before the effective date of section 9545(b)(1) that a petition filed within one year of the effective date is deemed timely. See <u>Peterkin</u>, 722 A.2d at 641. Likewise, in a comparable situation we, along with other courts of appeals, adopted a transitional rule when Congress enacted the AEDPA in 1996 so as to preserve claims from immediate extinction by the statute's time rules during a one-year grace period after its enactment. See, e.g., <u>McAleese v. Brennan</u>, 483 F.3d 206, 212 (3d Cir. 2007).

15

that we reached in Bronshtein.[8]

The District Court believed that the circumstance that Holland's PCRA petition was pending in the PCRA court when section 9545(b)(1) was enacted and became effective was particularly important because of a colloquy at a PCRA hearing on December 14, 1995, held after the Legislature enacted section 9545(b) but before it became effective, i.e., during the period of the window of opportunity to file a PCRA petition. The District Court indicated that at the hearing the PCRA court brought the need for Holland to assert his federal claims at that time to his attention. Thus, the District Court explained that "the trial court [in the PCRA proceedings] brought this issue squarely to [Holland's] attention when [the court] asked [Holland] during his initial PCRA hearings if he had anything else he would like to present and explained to [him] that this opportunity may be [Holland's] last to raise further issues in a collateral proceeding." Holland, 150 F. Supp. 2d at 725. The District Court then stated that "[t]his warning was couched in terms which any lay person could not fail to understand." Id. We, however, have examined the PCRA proceedings and disagree with the District Court's understanding of them. In the PCRA proceedings Holland rejected his attorney's advice to testify and, instead, voluntarily decided not to do so. At that point the PCRA court told him that "I certainly can't force you to get on the stand, or force you to testify, even though it is probably to your benefit to do so." App. at 1170. Holland answered the court by saying "You're right" to which the court responded "You understand that this very well may be your very last opportunity in life to do that?" Id. We think that, contrary to what the District Court believed, this colloquy did not caution Holland that at that time he may have had his last opportunity "to raise further issues in a collateral proceeding." Holland, 150 F. Supp. 2d at 725. In fact, the PCRA court in the colloquy did not even mention the already enacted section 9545(b) time

[8]Even the December 3, 1997 PCRA petition filed on Bronshtein's behalf was filed after the effective date of section 9545(b). See supra note 6.

16

limitations. The PCRA court merely told Holland that at that moment he might have his last chance to testify, a warning that surely would have been understood to relate to Holland's pending claims which did not include an Ake due process of law constitutional claim.

In the circumstances this case is distinguishable from Cabrera, a case arising from New Jersey in which on direct appeal following a conviction the Appellate Division of the Superior Court remanded the case to the trial court to give the defendant an opportunity to withdraw his guilty plea. In remanding the case the Appellate Division provided that in the remand proceedings there could be "such further action as the parties and court find appropriate." Cabrera, 75 F.3d at 308-09 (quotation marks omitted). On the remand the trial court asked Cabrera, who later became the federal court petitioner, if there was anything else he wanted to say but Cabrera declined the opportunity to do so. Accordingly, it was clear that the state trial court gave Cabrera an opportunity to raise additional issues.

Subsequently, Cabrera filed a petition in the state courts seeking post-conviction relief on the ground of ineffectiveness of counsel. Although ordinarily in New Jersey a defendant need not raise an ineffectiveness claim on direct appeal, the court in the post-conviction relief proceeding rejected the claim on the ground that Cabrera passed up his opportunity to raise the claim on the remand following his direct appeal. In Cabrera's subsequent habeas corpus proceedings we found his ineffectiveness claim to be procedurally defaulted for the same reason. In reaching our conclusion we pointed out that Cabrera was represented by a new attorney on the remand in place of the allegedly ineffective attorney, the state trial court on the remand asked Cabrera if there was "anything" he wanted to raise, and "Cabrera and his attorney did not have to rely on an intricate analysis of state law to determine whether they could advance the ineffective assistance of counsel claims at the remand hearing . . . as [those claims] certainly came within the wide open category of 'anything.'" Cabrera, 175 F.3d at 313.

But Holland is not Cabrera. Cabrera was given an

17

opportunity to raise "anything," not merely to testify. Moreover, in Cabrera the ineffective assistance of counsel claim was related directly to Cabrera's application to withdraw his guilty plea. Thus, though respondents in these proceedings correctly quote Cabrera for the point that "a petitioner should be on notice of how to present his claims in the state courts if his failure to present them is to bar him from advancing them in a federal court," Cabrera, 175 F.3d at 313, the inference they draw from this language, i.e. that the PCRA trial court's warnings to Holland concerning his opportunity to testify was sufficient notice, is unjustified. See Appellees' rep. br. at 22.

In any event, even if the PCRA trial court explicitly had warned Holland on December 14, 1995, that he had to raise all of his possible issues and made it clear that it would permit him to do so we could not conclude that Holland's unasserted federal claims were procedurally barred. The opportunity to raise issues would not have been a mandate to do so for, as we indicated above, when the state PCRA court gave its warnings on December 14, 1995, the Pennsylvania Supreme Court had not yet rejected the relaxed waiver rule as it did not decide Albrecht until November 23, 1998. Thus, at the time of the trial court PCRA proceedings on December 14, 1995, a definitive warning that issues unless raised then would have been abandoned in the state courts would have been misleading. In sum, therefore, we conclude that the procedural default doctrine did not preclude Holland from presenting any of his federal claims in the District Court or from doing so here.

(b) The Disposition of this Appeal

Where then does our conclusion that none of Holland's claims are procedurally defaulted take us? Actually we arrive at the same place as the District Court, the denial of relief with respect to the guilt phase of the proceedings and the grant of relief with respect to the penalty phase. Thus, we will affirm the order of the District Court reaching that result in all respects.

We will reverse the logical order of discussion and address the penalty phase of Holland's trial first. As we have

18

explained, the District Court concluded that Holland's Ake claim was procedurally defaulted but it excused the default through application of the cause and prejudice doctrine that became implicated in the case by reason of the ineffectiveness of his attorney in failing to raise the Ake issue on direct appeal. The District Court then granted relief that would permit but not compel a new penalty trial at which the Commonwealth again could seek the death penalty. Certainly if the District Court was correct that even assuming that Holland procedurally defaulted the claim he was entitled to a new penalty proceeding based on the merits of his assertions under Ake, it would have held that in the absence of the procedural default he would have been entitled to such relief. In any event, exercising plenary review, we conclude that Holland is entitled to penalty phase relief on the Ake claim essentially for the reasons the District Court stated. Our conclusion renders Holland's remaining penalty phase arguments moot as he can receive no relief beyond that which he is receiving with respect to the penalty as we cannot discern any reason why if we accepted any of these arguments the Commonwealth would be precluded from seeking the death penalty at a new penalty proceeding.

With respect to the guilt phase we first deal with Ake. The District Court found that Holland's Ake claim was procedurally barred and that the procedural default could not be excused so as to allow him to assert his guilt phase Ake claims in the habeas corpus proceeding because Holland did not demonstrate that he suffered actual prejudice at the guilt phase of the trial by reason of the absence of an Ake expert. Thus, though we reject the District Court's procedural default conclusion because we hold that the state procedures and proceedings on which it relied on are not adequate to bar his Ake claim, still Holland cannot obtain relief under Ake from the guilt phase of the trial unless the state trial court prejudiced him by not making a pretrial Ake appointment. Of course, we only could reach that conclusion by rejecting the District Court's conclusions on the prejudice issue. In considering this issue it is important in this regard to recognize that Holland's Ake claim is tenable only when combined with his ineffective assistance of counsel claim with respect to the guilt phase of the trial as

19

Holland did not make a motion seeking an Ake appointment until after the trial. Holland seems to recognize this point for in his brief he meshes his Ake and ineffective assistance of counsel claims with the following explanation:

> For these reasons, and as the District Court found, the due process right to proper expert assistance and the Sixth Amendment right to effective assistance of counsel were violated when the court failed to appoint a defense expert, counsel failed to demand a defense expert, the neutral expert did not address any of [Holland's] potential mental health defenses at guilt -or penalty-phase, and counsel made no effort to ascertain what mental health defenses . . . would be reasonably available.

Appellant's br. at 49 (internal quotation marks omitted). Moreover, in his brief Holland explains that before his trial his attorney filed a notice of mental infirmity defense and successfully moved for a court-appointed psychiatrist and, rather than seeking a defense expert, accepted the appointment of an "independent" "neutral" psychiatrist. Id.

Under Strickland v. Washington a petitioner claiming relief on the basis of ineffective assistance of counsel must show that his counsel's representation of him fell below an objective standard of reasonableness and that the deficient performance prejudiced his defense. 466 U.S. 668, 688, 693, 104 S.Ct. 2052, 2064, 2067 (1984). To establish that there had been prejudice a petitioner must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. at 2068. A reasonable probability is "sufficient to undermine confidence in the outcome." Id. As the District Court observed, "[t]he prejudice standard applied in the ineffective assistance context is nearly identical to the actual prejudice standard for excusing a procedural default articulated in Coleman." Holland, 150 F. Supp. 2d at 727. Consequently, the District Court concluded that it could "rely on any findings

20

of prejudice within [its] ineffectiveness inquiry to satisfy any claims of actual prejudice to [Holland in a cause and effect inquiry]." Id.

Overall, again exercising plenary review, we are convinced that Holland was not prejudiced at the guilt phase of the trial by the absence of an Ake mental health expert appointment and that even if the state trial court had made that appointment the result at the guilt phase of the trial surely would not have been different. Thus, Holland cannot obtain relief by a combination of ineffective assistance of counsel and Ake claims.

Furthermore, even if we eliminate the need for Holland to make an ineffective assistance of counsel showing to support his Ake claim our result would not be different. To start with, as the District Court pointed out, Holland did not "request[ ] [an Ake] defense expert during the guilt phase of his state murder trial [and] [h]is post-trial motion argued only that he needed a court-appointed mental health expert for assistance in developing mitigation evidence at the penalty phase." Holland, 150 F. Supp. 2d at 755. Consequently, the court held that he did not have a "remedial claim" by reason of the lack of that appointment and he is not "entitled to it under the circumstances." Id. We agree as the trial court made the appointment that Holland sought, an impartial psychiatrist, and to use Holland's own word, "accepted." Appellant's br. at 4. See Clisby v. Jones, 960 F.2d 925, 934 n.12 (11th Cir. 1992) ("We have held that Ake does not impose upon the trial court a duty sua sponte to appoint a psychiatrist."). Moreover, just as we are satisfied that for purposes of an ineffective assistance of counsel claim Holland was not prejudiced at the guilt phase of the trial by the absence of an Ake appointment, we are satisfied that for due process of law purposes the absence of such an appointment did not prejudice Holland.

The final matter that we must consider is the effect of our conclusion that Holland's federal claims arising from the guilt phase of his trial beyond his Ake claim, even if not raised in the state courts, were not procedurally barred. As we indicated at the outset of this opinion, we conclude that all of these claims, as

21

well as the claims that Holland did raise, are without merit to the end that he is not entitled to relief on the basis of those claims separately or in conjunction with each other.

## IV.  CONCLUSION

For the foregoing reasons we will affirm the order of April 25, 2001.