NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-1770

_____

PETER MICHAEL KARENBAUER,

Appellant

v.

JEFFREY BEARD, Secretary, Pennsylvania Department of Corrections;
LOUIS FOLINO, Superintendent, State Correctional Institution at Greene

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(Civ. No. 2-05-cv-01586)
Honorable David S. Cercone, District Judge

_____

Argued June 23, 2010

_____

BEFORE: SMITH, FISHER, and GREENBERG, Circuit Judges

(Filed: August 12, 2010)

_____

Lisa B. Freeland (argued)
Office of Federal Public Defender
1001 Liberty Avenue
1500 Liberty Center
Pittsburgh, PA 15222

Attorney for Appellant

James P. Barker (argued)
Jennifer A. Buck
Office of Attorney General of Pennsylvania
Appeals & Legal Services
Strawberry Square
16th Floor
Harrisburg, PA 17120

      <u>Attorneys for Appellees</u>

---

OPINION OF THE COURT

---

GREENBERG, <u>Circuit</u> <u>Judge</u>,

## I. INTRODUCTION

This matter comes on before the Court on Peter Michael Karenbauer's appeal from a District Court order entered on February 25, 2009, denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, a provision of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Though the District Court wrote its own opinion, it also adopted a report and recommendation of a magistrate judge recommending that it deny the petition. <u>Karenbauer v. Klem</u>, No. 2:05-cv-1586, 2009 WL 473860, at *1 (W.D. Pa. Feb. 25, 2009). In an order entered on July 16, 2009, we granted Karenbauer's application for a certificate of appealability limited to his claims that (1) the state trial court violated his due process rights when it did not conduct a hearing on whether he was competent to stand trial; and (2) his trial counsel provided

unconstitutionally ineffective assistance by not requesting a hearing on the issue of his competency to stand trial. Because we conclude that Karenbauer is not entitled to relief on either of these claims, we will affirm the order denying Karenbauer's petition for a writ of habeas corpus.

## II. BACKGROUND

The facts of this case are recited in great detail in the magistrate judge's report and recommendation and in the District Court's opinion and order. Accordingly, we will discuss only those facts pertinent to the issues contained in the certificate of appealability. Police arrested Karenbauer in 1995 for the killing of Lacy Johnson,[1] the eight-year-old daughter of his girlfriend, Nita Johnson, following which the Commonwealth charged him with her first degree murder in the Court of Common Pleas of Lawrence County, Pennsylvania. Though Karenbauer confessed to the homicide, he maintained that he could not be guilty of first degree murder because his diminished mental capacity rendered him unable to form the specific intent to kill.

### A.     Medical Evaluations of Karenbauer

Several mental health professionals evaluated Karenbauer in advance of the trial.

---

[1]We note that the victim's name has been spelled as "Lacy" and "Lacey" at different places in documents in this case. We use the form "Lacy" as the parties have in their briefs.

Psychologist Dr. Albert Scott evaluated Karenbauer on April 1 and May 21, 1996. Dr. Scott diagnosed Karenbauer with a variety of ailments including depression, substance dependency, borderline personality disorder, and antisocial personality disorder. Dr. Scott's ultimate conclusion, however, was that although Karenbauer was "definitely mentally ill," he was competent to stand trial and did not have a defense to the murder charge based on diminished capacity. App., Vol. II, at 10. With respect to competency, Dr. Scott concluded "[i]t was quite obvious that [Karenbauer] understood and was able to participate in his defense." Id. at 8; see also id. at 78 (stating that Karenbauer "was certainly capable of participating in his own defense"); and id. at 85 (stating that Karenbauer was competent). Dr. Scott's findings were contained in a Psychological Report dated June 8, 1996, and in deposition testimony given on July 22, 1996.[2] Psychiatrist Dr. Robert Wettstein also evaluated Karenbauer during this period and found him not to have a defense to first degree murder based on diminished capacity. Dr. Wettstein did not opine on Karenbauer's competency to stand trial.

Following the Scott and Wettstein evaluations, another psychiatrist, Dr. Lawson

---

[2]In a sworn Declaration and Affidavit dated September 6, 1999, Dr. Scott stated, inter alia, that it was his understanding at the time that he was deposed that his deposition testimony "would relate to the guilt-stage issues only, i.e., threshold competency, diminished capacity, insanity or possible guilty but mentally ill plea," but that if he had been questioned about mitigating circumstances for penalty phase purposes, he "would have testified that Mr. Karenbauer was under the influence of extreme mental and emotional disturbances at the time of the offense, and his ability to conform his conduct to the requirements of the law w[as] diminished." App., Vol. II, at 12.

Bernstein, evaluated Karenbauer on July 23, 1996.  Dr. Bernstein issued a report stating that Karenbauer was moderately mentally retarded, suffered severe physical and sexual abuse as a child, sustained numerous head injuries in his youth, had diminished neuropsychological functioning as a result of chronic substance abuse, and suffered from depression and post-traumatic stress disorder.  Based on these diagnoses, Dr. Bernstein concluded that Karenbauer "suffered from a significant and chronic diminished cognitive capacity to premeditate and deliberate in regards to the formation of specific criminal intent during the time period in question." Id. at 19.  Dr. Bernstein did not address whether Karenbauer was competent to stand trial.  At the trial the prosecution challenged Dr. Bernstein's conclusions with testimony from Dr. Christine Martone, a staff psychiatrist at the Pennsylvania State Correctional Institution at Pittsburgh, who concluded that Karenbauer's mental retardation was mild not moderate, and that during the relevant time period he was able to form the specific intent to kill.

B.  Karenbauer's Behavior During the Trial Court Proceedings

Karenbauer's mental condition and his behavior while in custody were discussed at various points throughout the trial court proceedings.  A detective who testified for the prosecution at trial stated that during a recess in a pre-trial proceeding she overheard Karenbauer, who was in a private room about fifteen feet away from her, shouting "I did it, I don't know why I did it, nobody can tell me why I did it. . . . They should just shoot

5

me." Commonwealth v. Karenbauer, 715 A.2d 1086, 1090 (Pa. 1998). The witness described Karenbauer as crying and upset.

On July 15, 1996, before the commencement of voir dire, the trial court judge asked Randall Hetrick, Karenbauer's trial counsel, whether Karenbauer's competency was an issue in light of the mental health evaluations that had been conducted at that point, i.e., the Scott and Wettstein evaluations.[3] After counsel responded that it was not, the judge asked Karenbauer whether he understood what they were talking about when they referred to competency. Karenbauer responded in the affirmative. The judge then explained:

> Competency and insanity are two different things. One can be both, and one can be one and not the other. I'm concerned about your understanding what's going on, but you don't have any mental illness that would adversely affect your ability to know what's going on and understand and make intelligent decisions. All right.

App., Vol. II, at 21-22. After an off-the-record discussion, counsel for both sides stated that they were ready to proceed to trial and begin voir dire.

Jury selection continued uneventfully until Monday, July 22, 1996, when Hetrick requested a sidebar conference and informed the trial court judge and opposing counsel that:

> It came to my attention this weekend that Mr. Karenbauer took a razor blade to himself and carved up both of his arms real good. He did not require any type of hospitalization, but he's been in the med cell all

---

[3]As we have indicated, Dr. Bernstein made his evaluation on July 23, 1996.

6

weekend, and they've been checking him every 15 minutes. I talked to him on Saturday. I believe that he's okay, but my concern is that maybe somebody should meet with him briefly to put something on the record that at this point he's competent.

Id. at 2. Hetrick continued, noting that he had talked to Karenbauer after the incident for about two hours, and that during the first half hour Karenbauer was "very agitated, not making a whole lot of sense," but that he eventually calmed down and didn't seem any different than he had previously. Id.

The judge then stated he could question Karenbauer with respect to his competency to stand trial, but requested that Hetrick speak with Karenbauer first to get a sense of Karenbauer's condition. After conferring with Karenbauer, Hetrick stated:

> He appears to be okay this morning. He's basically told me that he's upset, he doesn't know if he can go forward with this. I don't know any basis for why he's saying that. Other than that, he appears to understand what's going on. . . . He says he's upset and doesn't know if he can go through with this, but I explained to him a little bit, or tried to explain to him, what I'd meant by competency and he said he understands what's going on and he thinks he can assist in the case at this point.

Id. at 4. Hetrick also noted that the jail where Karenbauer was being housed had moved Karenbauer from the med cell back into his regular cell. After both Hetrick and the prosecution expressed their belief that Karenbauer was competent to stand trial, the judge concluded the sidebar conference and proceeded with jury selection.

At the trial itself, Karenbauer acted in a way he claims was not rational and revealed his inability to understand the nature of the proceedings against him and assist in his own defense. In deciding whether or not to testify on his own behalf during the guilt

7

phase of the trial, Karenbauer sought the advice of Nita Johnson, mother of the victim and Karenbauer's girlfriend at the time of the killing. Johnson testified for both the prosecution and Karenbauer, and although she directly implicated Karenbauer in the murder of her daughter Lacy, she also described the positive relationship that Karenbauer had with Lacy and expressed the difficulty she had believing that Karenbauer was capable of committing the murder. Thus, it is fair to say that her testimony was helpful to both sides of the case.

During the penalty phase of the proceedings, as part of Karenbauer's presentation of mitigating evidence, his mother, Darla McBride, testified about the abuse that Karenbauer's stepfather had inflicted on the family when Karenbauer was a child. While describing one particular incident of abuse, McBride became emotional and began crying, at which point Karenbauer interrupted the proceedings to demand that the trial judge take her off the stand. The Court took a recess, and after Karenbauer and McBride regained their composures, McBride resumed her testimony without incident.

C.    Procedural History

The jury convicted Karenbauer of first degree murder and sentenced him to death. On direct appeal, the Supreme Court of Pennsylvania affirmed the conviction and sentence and the Supreme Court of the United States denied Karenbauer's petition for a writ of certiorari. Karenbauer, 715 A.2d 1086, cert. denied, 526 U.S. 1021, 119 S.Ct.

8

1258 (1999).  Karenbauer then sought collateral relief from the Pennsylvania courts under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541-9546 (West 2010), challenging both his conviction and his sentence.  While PCRA proceedings were pending, the Supreme Court of the United States decided Atkins v. Virginia, holding that the execution of a mentally retarded person violated the Eighth Amendment's prohibition on cruel and unusual punishment.  536 U.S. 304, 122 S.Ct. 2242 (2002).  Karenbauer thereafter filed a petition for resentencing in the trial court as experts for both sides had testified at trial that Karenbauer was mentally retarded.  The Court granted the petition and resentenced Karenbauer to life imprisonment.

Following the resentencing, Karenbauer continued to challenge his conviction in the PCRA proceedings, arguing, inter alia, that the trial court should have conducted a competency hearing and that his trial counsel had been ineffective for failing to request that it conduct such a hearing.  The Court denied Karenbauer relief and on appeal the Superior Court affirmed and the Supreme Court of Pennsylvania denied his petition for allowance of an appeal.  See Commonwealth v. Karenbauer, 863 A.2d 1226 (Pa. Super. Ct. 2004) (table), perm. app. denied, 875 A.2d 1073 (Pa. 2005) (table).  Karenbauer thereafter timely filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Pennsylvania.

III.  JURISDICTION AND STANDARD OF REVIEW

9

The District Court had jurisdiction under 28 U.S.C. § 2254 and upon our issuance of a certificate of appealability we obtained jurisdiction under 28 U.S.C. §§ 1291 and 2253. Inasmuch as the District Court did not conduct an evidentiary hearing our review of its order is plenary. Holland v. Horn, 519 F.3d 107, 111 (3d Cir. 2008). Under the AEDPA:

> An application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Moreover, in considering the application a federal habeas court must afford a presumption of correctness to the state court's factual findings, which the petitioner bears the burden of rebutting by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).


## IV. DISCUSSION

We granted a certificate of appealability to decide whether Karenbauer is entitled to habeas corpus relief on his claims that the trial court violated his due process rights under the Fourteenth Amendment by not conducting a competency hearing and his trial

10

counsel denied him effective assistance under the Sixth Amendment by not requesting a competency hearing. Because the Pennsylvania Superior Court was the highest state court to address Karenbauer's competency claims on the merits, we review that court's disposition of those claims under the AEDPA.[4]

A.      Due Process

A state criminal defendant has a right under the Due Process Clause of the Fourteenth Amendment not to be tried while mentally incompetent. Drope v. Missouri, 420 U.S. 162, 171-73, 95 S.Ct. 896, 903-05 (1975); Pate v. Robinson, 383 U.S. 375, 385, 86 S.Ct. 836, 842 (1966). A defendant is competent if he is able "to consult with his lawyer with a reasonable degree of rational understanding" and possesses "a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 789 (1960).

Karenbauer argues that he was incompetent to stand trial and that his medical records, attempted suicide, and erratic behavior throughout the trial court proceedings demonstrated his incompetency. He contends this evidence gave the trial court reason to doubt his competency and that consequently the trial court constitutionally was required to hold a hearing to ascertain if he was competent. Karenbauer contends in his habeas

---

[4]The Supreme Court did not address the competency issue on the direct appeal and thus we infer that Karenbauer did not raise it at that time.

11

corpus petition that by finding that he was not entitled to that hearing, the Superior Court unreasonably applied Drope and unreasonably determined the facts in light of the available evidence.[5]

In Drope the Supreme Court held that a trial court must conduct a competency hearing if it has sufficient indicia to believe that a defendant is incompetent to stand trial. "[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but [] even one of these factors standing alone may, in some circumstances, be sufficient." Drope, 420 U.S. at 180, 95 S.Ct. at 908. The Court found in Drope that the defendant James Edward Drope had exhibited sufficient indicia of incompetency to require the trial court to conduct further inquiry because, inter alia, a psychiatric evaluation of Drope raised questions about his competency, Drope tried to kill himself during the trial, and there was evidence that Drope attacked his wife prior to the trial. Id. at 178-80, 95 S.Ct. at 907-08.

It was of particular significance to the Supreme Court that Drope had attempted suicide during the trial by shooting himself in the stomach, causing him to be hospitalized and "absent for a crucial portion of his trial," and that Drope's wife, who was the victim

---

[5]Karenbauer concedes that the facts of Drope are distinguishable from those in the present case. Accordingly, he does not argue that the Superior Court's rejection of his competency claim was "contrary to" Drope. See 28 U.S.C. § 2254(d); Reply br. for Appellant at 5 n.2.

of his crime, testified that she had not wanted to press the prosecution but changed her mind after Drope tried to choke and kill her the Sunday evening prior to the trial. Id. at 179-81, 95 S.Ct. at 907-08. With respect to the suicide attempt and Drope's resultant absence from trial, the Court observed that the absence affected its due process analysis in two ways:

> first, it was due to an act which suggests a rather substantial degree of mental instability contemporaneous with the trial; second, as a result of petitioner's absence the trial judge and defense counsel were no longer able to observe him in the context of the trial and to gauge from his demeanor whether he was able to cooperate with his attorney and to understand the nature and object of the proceedings against him.

Id. at 181, 95 S.Ct. at 908 (internal citation omitted). The Court further noted that Drope's wife's testimony cast substantial doubt on Drope's competency because the alleged attack "hardly could be regarded as rational conduct" given that Drope's "fate depended in large measure on the indulgence of his wife, who had hesitated about pressing the prosecution." Id. at 179, 95 S.Ct. at 907.

The record and proceedings before the trial court in Drope was far more suggestive of incompetency than that before the trial court in Karenbauer's case. To start with in Drope, unlike in this case, the defense attorney after the suicide attempt sought a continuance of the trial, an application that could have put the trial court on notice of the need for a competency hearing. Id. at 175-77, 95 S.Ct. at 905-06. Moreover, the only evaluating expert to address the issue found Karenbauer competent to stand trial; Karenbauer's conduct throughout the trial court proceedings, while perhaps erratic, did

13

not reveal an inability to understand what was at stake in those proceedings; and Karenbauer's self-mutilation, even if considered a genuine suicide attempt,[6] did not prevent the defense counsel or the trial judge from observing Karenbauer in the context of the trial to ensure he was capable of cooperating with his attorney and understanding the nature of the proceedings. We recognize that Hetrick after the suicide attempt but prior to the trial told the trial judge that Karenbauer said he did not know that he could "go forward with this" and did not "know if he can go through with this," meaning the trial, but such a reluctance to proceed was hardly surprising because he was, after all, facing the death penalty.

Overall it is clear that the facts before the trial court in this case did not provide sufficient indicia cause to believe Karenbauer was incompetent to stand trial. See, e.g., Jermyn v. Horn, 266 F.3d 257, 298 (3d Cir. 2007) (no competency hearing required "where there were no medical opinions on competency submitted to the trial court, no signs from trial counsel that the defendant's competence was in doubt in his view, and the defendant's behavior, while strange, was not sufficiently indicative of an individual who was incapable of understanding the nature of the proceedings, communicating with counsel or assisting in his defense"). Accordingly, the Superior Court reasonably applied

---

[6]We note that Dr. Bernstein, who examined Karenbauer several days after the supposed suicide attempt, made no mention of the incident in his examination report, but did state that during the examination, Karenbauer "denied current suicidal or homicidal ideation." App., Vol II, at 17.

<u>Drope</u> and reasonably determined the facts in light of the available evidence when it held that the trial court was not required to inquire further into Karenbauer's competency to stand trial.

B.    <u>Ineffective Assistance of Counsel</u>

A person accused of a crime in federal or state court has a right under the Sixth Amendment to the effective assistance of counsel.  <u>Strickland v. Washington</u>, 466 U.S. 668, 685-86, 104 S.Ct. 2052, 2063 (1984).  A claim of ineffective assistance is governed by the two-prong test set forth by the Supreme Court in <u>Strickland v. Washington</u>. "Under <u>Strickland</u>, a habeas petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different."  <u>Rainey v. Varner</u>, 603 F.3d 189, 197 (3d Cir. 2010) (citing <u>Strickland</u>, 466 U.S. at 687, 104 S.Ct. at 2052).  Karenbauer argues that he was denied effective assistance of counsel because his trial counsel failed to seek a hearing on his competency from the trial court.  Karenbauer argues that the Superior Court by rejecting this claim unreasonably applied <u>Strickland</u> and unreasonably determined the facts in light of the available evidence.

Counsel's failure to request a competency hearing would give rise to an ineffective assistance claim if there were "sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the defendant's competency, and there is a reasonable

15

probability that the defendant would have been found incompetent to stand trial had the issue been raised and fully considered." Taylor v. Horn, 504 F.3d 416, 438 (3d Cir. 2007) (quoting Jermyn, 266 F.3d at 283). Karenbauer's claim fails on the first prong of Strickland because Hetrick's decision not to request further inquiry into Karenbauer's competency was objectively reasonable in light of the circumstances. "As with the trial court's decision not to convene a competency hearing, there were insufficient indicia of incompetence to deem counsel's decision unreasonable." See id. at 438-39. Moreover, Karenbauer has failed to show prejudice under Strickland's second prong because he cannot demonstrate a reasonable probability that he would have been found incompetent if only his attorney had asked for a hearing. See id. at 439. Accordingly, the Superior Court reasonably applied Strickland and reasonably determined the facts in light of the available evidence when it denied Karenbauer's ineffective assistance of counsel claim on this issue.

## V. CONCLUSION

For the reasons set forth above, we will affirm the District Court order entered on February 25, 2009, denying Karenbauer's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.