PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2657
_____

WILLIAM EVANS,

v.

*SECRETARY PENNSYLVANIA DEPARTMENT OF
CORRECTONS; ATTORNEY GENERAL OF
PENNSYLVANIA; SUPERINTENDENT OF THE SCI AT
WAYMART; DISTRICT ATTORNEY OF THE COUNTY
OF LEHIGH,

Appellants

*(Pursuant to Rule 43(c), Fed. R. App. P.)
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-05-cv-06826)
District Judge:  Hon. Norma L. Shapiro
_____

Argued
December 16, 2010

Before: JORDAN, HARDIMAN and VAN ANTWERPEN,
*Circuit Judges*

(Filed May 16, 2011 )
_____

Jeffrey S. Dimmig, Esq.
Heather F. Gallagher, Esq.   [ARGUED]
James B. Martin, Esq.
District Attorney's Office
455 W. Hamilton Street
Allentown, PA   18101
        *Counsel for Appellants*

Michael J. Kelley, Esq.   [ARGUED]
3007 Devereaux Avenue
Philadelphia, PA   19149
        *Counsel for Appellee*
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

The Secretary of the Pennsylvania Department of Corrections and other officials of the Commonwealth (collectively "the Commonwealth")[1] appeal the May 29, 2009

_____

[1] More specifically, the Appellants are the Secretary, Jeffrey A. Beard; the Superintendent of the State Correctional

Order of the United States District Court for the Eastern District of Pennsylvania granting William Evans's petition for a writ of habeas corpus and ordering Evans's release. The District Court held that Evans's due process rights had been violated by a change in the calculation of his release date. For the following reasons, we conclude that the District Court erred in holding that Evans had a constitutionally protected liberty interest in a miscalculated release date and further erred in holding that his due process rights were violated. We will therefore reverse the District Court's order and remand with the instruction that Evans's habeas petition be denied.

## I. Factual and Procedural Background

Evans was arrested in Memphis, Tennessee, on warrants issued by Lehigh County, Pennsylvania charging him with rape of minors, and was ultimately convicted of multiple counts of rape, incest, involuntary deviate sexual intercourse, and terroristic threats. At the end of the tortuous route this case has taken, he was left in prison for several more years than he had long been led to believe he would serve. The present appeal throws into relief the problems that even well-intentioned state actors and a conscientious district court can encounter when a mistake lies hidden for many years.

Following his extradition from Tennessee, Evans was committed to Lehigh County Prison on November 6, 1986. Soon thereafter, he was formally charged by Lehigh County

---

Institute at Waymart; the District Attorney of Lehigh County; and the Attorney General of Pennsylvania.

with the crimes for which he had been arrested.[2] On November 13, 1986, Evans was transferred to Northampton County, Pennsylvania, and charged with separate counts of rape. He was tried and convicted on both the charges in Northampton County and those in Lehigh County and sentenced on December 6, 1990 and March 21, 1991 respectively. The Pennsylvania Superior Court subsequently determined that those convictions were so affected with error that they had to be vacated and new trials granted. *Commonwealth v. Evans*, 603 A.2d 608 (Pa. Super. Ct. 1992).

On remand, Evans, who had been incarcerated since his extradition in 1986, stipulated to non-trial dispositions in both the case in the Northampton County Court of Common Pleas (the "Northampton Court") and the case in the Lehigh County Court of Common Pleas (the "Lehigh Court"). On January, 14, 1994, he was sentenced in the Northampton Court to 10 to 20 years of imprisonment and awarded credit for time served. He was then, on June 29, 1994, sentenced in the Lehigh Court to 10 to 20 years of imprisonment to be served concurrently with the sentence imposed by the Northampton Court. The sentence imposed by the Lehigh Court is the only one directly at issue on this appeal. In

---

[2] Evans was alleged to have repeatedly raped and assaulted three children, aged three, five, and eight, over the course of a year when the children lived with him. The details of the crimes are horrific and need not be recounted here. It is sufficient to note that, at least before us, Evans does not dispute those details and they comport with the crimes for which he was later sentenced. The children were "related to [Evans] and [he was] in a position of care and trust." (App. at 134.)

4

sentencing Evans, the Lehigh Court stated that he would be given "credit … as required by law for all time spent in custody as a result of these criminal charges for which sentence is being imposed." (App. at 133.)

A few days later, on July 8, 1994, someone at the Lehigh Court prepared an administrative form called a "Court Commitment Form DC-300B" (the "Commitment Sheet"), recording the effective date of the Lehigh County sentence as November 6, 1986, which corresponds to the date Evans was placed in the Lehigh County prison after his extradition. The Commitment Sheet was not signed by the sentencing judge. By designating the date of Evans's sentence as November 6, 1986, the Lehigh Court was effectively granting credit on the Lehigh County sentence for Evans's time served from November 6, 1986, forward. That designation, however, ran afoul of Pennsylvania law because it included credit for time served that had already been applied to the sentence Evans was serving on his conviction in Northampton County.[3]

---

[3] Pursuant to 42 Pa. Cons. Stat. Ann. § 9760, "if [a] defendant is arrested on one charge and later prosecuted on another charge … credit against the maximum term and any minimum term of any sentence resulting from such prosecution shall be given for all time spent in custody under the former charge that has not been credited against another sentence." *See also Bright v. Pa. Bd. of Prob. & Parole*, 831 A.2d 775, 778 (Pa. Commw. Ct. 2003) (holding that "[s]ection 9760(4) makes it clear that time credit on a sentence may be granted only when it has not already been credited toward another sentence"); *Doria v. Pa. Dep't of Corr., Records Dep't.,* 630 A.2d 980, 982 (Pa. Commw. Ct. 1993) (holding that presentence custody time in one county

Later that year, the Department of Corrections ("DOC") realized that the Commitment Sheet reflected that Evans was being given credit for time served on his Lehigh County sentence from November 13, 1986, to March 20, 1991, even though that time had already been credited to his Northampton County sentence. The DOC recognized that Evans was not entitled to such double-crediting and, on December 28, 1994, wrote the Lehigh Court, advising the sentencing judge of the problem and saying:

> [T]o date, [the Department has] not extended any duplicative portion of this credit to this inmate. If your honor agrees that the credit is not appropriate, then amended commitment papers from the Clerk of the Court removing the reference to this credit would be sincerely appreciated. However, if Your Honor disagrees with the analysis set forth in this letter and wishes the Department to apply the full amount of credit originally indicated for this sentence, the Department will apply that credit upon receiving your reply to this letter confirming your intention.

(App. at 157.) The DOC's letter indicated that a copy was sent to Evans's counsel, but Evans claims he never saw it.[4]

could not be credited toward the additional counties' sentences, even if the sentences were ordered to run concurrently).

[4] Despite the DOC's letter, approximately six weeks later, on February 9, 1995, the Commitment Sheet, which had been issued by the Lehigh Court in 1994 without certification, was

Nearly eleven years after the imposition of Evans's Lehigh County sentence, the DOC issued a Sentence Status Summary on April 13, 2005, deducting the credit for time he served between November 13, 1986, to March 20, 1991, which had improperly been reflected on Evans's Commitment Sheet.[5]  After that change, Evans's release date was moved

certified.  That the Commitment Sheet at first was not signed by the sentencing judge and did not bear the seal or signature of the Lehigh Court clerk did not, however, deprive the document of legal effect.  *See Boyd v. Pa. Dep't of Corr.,* 831 A.2d 779, 783 n.6 (Pa. Commw. Ct. 2003) (concluding that even though a Court Commitment order, Form DC-300B was completed by a clerk on the court's behalf and was not signed by the sentencing judge, it was not improper for the DOC to rely on it.).

[5] The DOC does not have the "power to change sentences, or to add or remove sentencing conditions, including credit for time served; this power is vested in the sentencing court." *Commonwealth v. Mann*, 957 A.2d 746, 749 (Pa. Super. Ct. 2008); *see also McCray v. Pa. Dep't of Corr.,* 872 A.2d 1127, 1133 (Pa. 2005) (finding that the DOC is an executive branch agency and has no duty or power to adjust sentencing conditions, specifically to award credit for time previously served).  Here, the DOC initially recalculated the maximum release date, a function arguably beyond its authority, but the corrected maximum release date was later affirmed by the trial court's issuance of an amended Commitment Sheet.  The DOC and the trial court gave time credit to Evans from the original arrest on November 6, 1986, to November 12, 1986. Evans was also awarded credit for the time of the vacated Lehigh County sentence until the new sentence – March 21, 1991, to June 29, 1994.  Accordingly, the time period that

7

from November 2006 to March 2011.[6] Upon learning of his amended release date, Evans promptly filed in the Lehigh Court a *pro se* petition claiming that the DOC had acted improperly.

The Lehigh Court denied Evans's request that he retain the credit for time served as reflected on the Commitment Sheet. An amended Commitment Sheet was issued by the Lehigh County Clerk on May 25, 2005, changing the effective date of Evans's sentence from November 6, 1986, to June 29, 1994, and Evans was advised of that change on June 1, 2005.

Shortly thereafter, on June 24, 2005, Evans filed a *pro se* motion to withdraw his plea of *nolo contendere*, which the Lehigh Court treated as a petition for relief under the Post Conviction Relief Act ("PCRA"). *See* 42 Pa. Cons. Stat. Ann. §§ 9541-9546. On August 23, 2005, the Lehigh Court dismissed that PCRA petition as untimely, because Evans had failed to file the petition within one year of the availability of PCRA relief.[7] On November 17, 2005, Evans responded by

_____

was treated as a duplicate credit contrary to Pennsylvania law was from November 13, 1986, to March 20, 1991.

[6] There is some confusion as to Evans's corrected release date. The revised Court Commitment Sheet reflects March 14, 2011. However, the briefs and the Memorandum of the Clerk show March 7, 2011. For the purposes of this opinion, March 14, 2011, will be the controlling date.

[7] Under 42 Pa. Cons. Stat. Ann. § 9545(b)(1), petitions for relief must be filed within one year of the date the judgment became final which, in Evans's case, was in 1994. However,

8

filing a motion to appeal *nunc pro tunc,* in an attempt to challenge the effect of the August 23, 2005 order. The Lehigh Court denied his motion without a hearing. Evans then appealed to the Superior Court of Pennsylvania, which also denied him relief. In its opinion, the Superior Court noted the "gross untimeliness" of his November 17, 2005 motion to appeal *nunc pro tunc* and determined that, because of that, the motion should be treated as a second PCRA petition. (App. at 181.) Treating it as such, the Superior Court found it untimely because it was filed more than one year after the effective date of the PCRA, and Evans had failed to successfully invoke any of the statutory exceptions to that timing requirement.[8] (*Id.*)

---

42 Pa. Cons. Stat. Ann. § 9545 became effective on January 16, 1996, which was after Evans's judgment had become final. *See* Section 3(1) of Act Nov. 17, 1995 (Spec. Sess. No. 1), P.L. 1118, No. 32. Therefore, Evans's petition would be considered timely filed if first filed by January 16, 1997, one year after the effective date of the Act, not the date of his judgment. *Id.*

[8] There are three exceptions to the timeliness requirement which a petitioner must allege and prove. 42 Pa. Cons. Stat. Ann. § 9545(b)(1). Those are: "(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States; (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time

Evans next filed a *pro se* petition for a writ of habeas corpus in federal court under 28 U.S.C. § 2254.[9] He argued, among other things, that the Lehigh Court lacked jurisdiction to amend his release date and that the amendment violated his due process rights. The assigned Magistrate Judge issued a Report and Recommendation ("R & R") recommending that Evans's habeas petition be denied because, although the "Court cannot condone the fact that [Evans] was repeatedly misled, over a period of eleven years, to believe his sentence expiration date was in November 2006 … the error [did] not rise to constitutional proportions." (App. at 45.) While the District Court adopted the R & R in part, it ordered Evans's release because it concluded that the DOC and the Lehigh Court "arbitrarily and capriciously" amended Evans's release date in violation of his due process rights. *Evans v. Beard*, 639 F. Supp. 2d 497, 511 (E.D. Pa. 2009). The Commonwealth's timely appeal of that decision is before us now.

---

period provided in this section and has been held by that court to apply retroactively."

[9] That petition was filed on November 30, 2005, but was put on hold and not addressed by the District Court pending the Superior Court's ruling on Evans's then-pending PCRA petition. The case was removed from administrative suspense on August 14, 2006.

10

## II.    Jurisdiction and Standard of Review

The District Court had jurisdiction over Evans's petition pursuant to 28 U.S.C. § 2254.[10]  We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

When a petitioner properly presents federal claims to a state court, but the state court does not consider the merits of the federal claims, the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") is inapplicable.[11]  *See Cone v. Bell*, 129 S. Ct.

---

[10]    The R & R recommended that 28 U.S.C. § 2244(d)(1)(D), an exception to the statute of limitations period for habeas petitions, be applied in this case.  That exception gives inmates one year to file a petition after "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  *Id*.  The District Court adopted that recommendation.  Before us, the Commonwealth does not challenge the District Court's adoption of the R & R's recommendation that this exception applies.  We likewise agree that it is applicable, because Evans could not have brought his claim concerning the amendment of the Commitment Sheet until, of course, the amendment occurred.

[11] AEDPA provides:  "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

11

1769, 1784 (2009) (holding that "[b]ecause the Tennessee courts did not reach the merits of [the] claim, federal habeas review is not subject to the deferential standard that applies under AEDPA"); *cf. Harris v. Ricci,* 607 F.3d 92, 96 (3d Cir. 2010) (holding AEDPA applicable when the merits of a petitioner's claim on appeal were adjudicated on the state level). Instead, Evans's federal "claim is reviewed *de novo*." *Cone*, 129 S. Ct. at 1784. Likewise, because "the District Court relie[d] entirely on the state court record and [did] not hold an evidentiary hearing, our review of the District Court's decision is … plenary." *Satterfield v. Johnson*, 434 F.3d 185, 190 (3d Cir. 2006).

A writ of habeas corpus is an extraordinary form of relief and is granted only to remedy constitutional error. *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993) (noting that habeas corpus has been regarded as an extraordinary remedy and that "[t]hose few who are ultimately successful [in obtaining habeas relief] are persons whom society has grievously wronged") (internal quotation marks and citation omitted). When there is error of constitutional magnitude, the question becomes whether that error was harmless or whether it "had substantial and injurious effect." *Fry v. Pliler*, 551 U.S. 112, 116 (2007) (internal quotation marks and citation omitted). In the latter event, habeas relief may be granted.

---

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## III.   Discussion

### A.   Procedural Default

Before we examine the merits of Evans's due process claim, we must first consider the Commonwealth's argument that his claim is procedurally barred from federal habeas review because he did not appeal the dismissal of his first PCRA petition and the state courts dismissed his second PCRA petition as time-barred under state law. Both the Magistrate Judge and the District Court concluded that Evans's claim was not procedurally barred. We will not disturb the District Court's ruling in that regard.

Though the Commonwealth failed to raise the issue of procedural default in the District Court proceedings or to object to the R & R's conclusion that Evans's claim was not procedurally defaulted, the Commonwealth has not waived its procedural default argument. While we have the authority to impose the consequences of waiver in a habeas appeal when the Commonwealth has not properly asserted a procedural default defense in its answer to a habeas petition, *see Szuchon v. Lehman*, 273 F.3d 299, 321-22 (3d Cir. 2001), we believe the Commonwealth's Amended Response to Evans's habeas petition sufficiently raised the issue for the District Court's consideration.[12] Certainly the procedural default issue was

_____

[12] We recognize that the Commonwealth's procedural default argument in its Amended Response was prompted by the Magistrate Judge's instruction. That does not alter our conclusion, however, because a federal court has the authority to raise the issue of procedural default *sua sponte*. *See Szuchon*, 273 F.3d at 321 n.13.

13

squarely addressed by both the Magistrate Judge and the District Court, and in a manner that did not prejudice Evans in any way. Additionally, the Commonwealth's failure to file objections to the R & R, in the context of a federal habeas corpus proceeding, did not result in the loss of the statutory right to appellate review. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987) (declining to adopt a rule conditioning "appellate review on the existence *vel non* of objections to a magistrate's report"). Once the District Court independently reviewed the Magistrate Judge's R & R, the Commonwealth's "previous failure to object [became] irrelevant." *Id.* at 879 n.4. Finding no waiver, then, we will consider the Commonwealth's position that Evans's due process claim is procedurally defaulted.

A state prisoner ordinarily must exhaust his federal claims in state court before seeking habeas relief in federal court. *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). Exhaustion requires a petitioner to "fairly present" his federal claims to the pertinent state courts before bringing those claims to federal court. *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007). The exhaustion requirement is deemed satisfied when a petitioner has presented his claims to the state courts but the state courts have refused to consider the claims on the merits based on an independent and adequate state procedural rule. *Holland v. Horn*, 519 F.3d 107, 112 (3d Cir. 2008). In other words, a claim may be exhausted but still be deemed as defaulted under state law. In that event, "federal habeas review … is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental

14

miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see Holland*, 519 F.3d at 112.

Before a violation of a state procedural rule can foreclose federal habeas review, the state rule must be adequate, that is, "firmly established and regularly followed." *Lee v. Kemna*, 534 U.S. 362, 376 (2002) (internal citation and quotation marks omitted).  Even if a state rule itself is adequate, the "exorbitant application" of the rule may in exceptional cases render the state ground inadequate to erect a procedural bar.  *Id.*; *see Cotto v. Herbert*, 331 F.3d 217, 239-40 (2d Cir. 2003) (describing factors to consider).  In deciding whether such a state procedural bar is adequate, it is not enough to say that the rule "generally serves a legitimate state interest"; rather, the adequacy "is determined with reference to the 'particular application' of the rule."  *Cotto*, 331 F.3d at 240 (quoting *Lee*, 534 U.S. at 387).

In the current case, the Pennsylvania Superior Court dismissed Evans's second PCRA petition as untimely under 42 Pa. Cons. Stat. Ann. § 9545(b)(1).  That state procedural rule requires that a PCRA petition, even a second or subsequent petition, be filed within one year of the date the judgment becomes final, unless "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." 42 Pa. Cons. Stat. Ann. § 9545(b)(ii); *see Commonwealth v. Bennett*, 930 A.2d 1264, 1270 (Pa. 2007) (construing the so-called "after-discovered evidence" exception).  The Superior Court correctly noted that Evans's judgment of sentence became final years before he filed his second PCRA

petition.[13]   The Superior Court acknowledged Evans's attempt to invoke the exception to the one-year period, but nonetheless dismissed his PCRA petition as "untimely and subject to no time of filing exceptions," without mentioning any of the events that happened in 2005 – events which actually formed the basis for Evans's due process claim. (App. at 184.)

Under Pennsylvania law, the after-discovered evidence exception "simply requires petitioner to prove that there were 'facts' that were 'unknown' to him and that he exercised 'due diligence.'"[14] *Commonwealth v. Johnson*, 945 A.2d 185, 189 (Pa. Super. Ct. 2008) (quoting *Bennett*, 930 A.2d at 1270). Here, it is beyond dispute that the "facts" giving rise to Evans's due process claim were "unknown" to him until eleven years after he was sentenced. Moreover, even if Evans had exercised the utmost diligence, he could not have

---

[13] The Superior Court also noted that Evans's judgment of sentence became final prior to the January 16, 1996 effective date of the statute setting the one-year limit in the PCRA. Thus, in Evans's case, the one-year period expired one year after the effective date, rather than one year after his judgment became final in 1994.

[14] We emphasize that we do not question whether the PCRA's one-year limit for filing PCRA petitions is adequate. *See Fahy v. Horn*, 516 F.3d 169, 189 (3d Cir. 2008) (noting that § 9545(b)(1) was firmly established and regularly applied as of November 23, 1998). Rather, our inquiry focuses solely on the Superior Court's refusal to apply the after-discovered evidence exception to the one-year period in Evans's case specifically.

16

discovered these "facts" because the corrections to the calculation of his release date did not occur until 2005.

Under these circumstances, the Pennsylvania courts' refusal to apply the after-discovered evidence exception is not an adequate basis to preclude federal habeas review of Evans's due process claim, and thus his due process claim is not procedurally defaulted.[15] We therefore turn to the merits of his claim.

---

[15] We note that there is an argument that Evans's claims are procedurally barred because his second PCRA petition was filed on November 17, 2005, more than sixty days after he learned of the newly-discovered facts. To avoid being procedurally time-barred, "[a]ny petition invoking an exception … shall be filed within 60 days of the date the claim could have been presented." 42 Pa. Cons. Stat. Ann. § 9545(b)(2). Therefore, Evans's second PCRA petition may be viewed as untimely under that requirement. However, the second PCRA petition was treated by the Superior Court as untimely not because it was filed sixty days late but because it was filed more than one year from Evans's sentencing date. In *Holloway v. Horn*, we stated that "[a] federal habeas court is 'not bound to enforce a state procedural rule when the state itself has not done so, even if the procedural rule is theoretically applicable to [the] facts.'" 355 F.3d 707, 714 (3d Cir. 2004) (citation omitted). Here, the Superior Court did not enforce the sixty-day rule even though it was theoretically applicable. Nor will we.

## B. Due Process

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The core concept of due process is protection against arbitrary government action. *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 845 (1998). As that concept has developed, it has come to have both substantive and procedural components. *Id.* at 846. Substantive due process is implicated if Evans had a cognizable constitutional right to be released on the date reflected by the original Commitment Sheet. *Cf. id.* ("[S]ubstantive due process guarantee protects against government power arbitrarily and oppressively exercised.") (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). Procedural due process is implicated if he had a liberty interest in his release that cannot be infringed without procedural protections such as notice and a hearing. *Cf. Lewis*, 523 U.S. at 846 ("[T]he procedural due process guarantee protects against 'arbitrary takings.'") (citing *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972)). We discuss each of those potential due process claims in turn.

### 1. Substantive Due Process

"The substantive component of the Due Process Clause limits what government may do regardless of the fairness of procedures that it employs." *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 399 (3d Cir. 2000). The "guideposts for responsible decisionmaking" on what is a fundamental right protected by substantive due process are "scarce and open-ended." *Washington v. Glucksberg*, 521 U.S 702, 720 (1997) (quoting *Collins v. City*

18

*of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992)). Indeed, there are inherent risks when "the judicial branch gives enhanced protection to certain substantive liberties without the guidance of the more specific provisions of the Bill of Rights." *Moore v. City of East Cleveland*, 431 U.S. 494, 502 (1977). For that reason, substantive due process "has at times been a treacherous field." *Id.* Therefore, in considering whether Evans's claimed interest is protected by substantive due process, we must be mindful that the inquiry not devolve into an exploration of our own policy preferences. *See Glucksberg*, 521 U.S. at 720 ("We must therefore exercise the utmost care whenever we are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the Members of this Court.") (internal quotation marks and citations omitted).

To determine whether one has been deprived of substantive due process, we first "define the exact contours of the underlying right said to have been violated." *Leamer v. Fauver*, 288 F.3d 532, 546 (3d Cir. 2002) (internal quotation marks and citation omitted). While Evans complains of the delay associated with the change in his calculated release date, neither the District Court nor the parties have defined with particularity Evans's underlying right, but we understand him to be asserting that it is a fundamental right to be released from prison on or about a date certain.[16]

---

[16] The District Court quoted part of Evans's objections to the R & R as follows: "The amendment of the effective date of Petitioner's Lehigh County sentence 11 years after its imposition and the resulting revised time credit ruling that changed Petitioner's maximum release date[] from

19

Next, because substantive due process protection "limits what the government may do in both its legislative and its executive capacities," and a different analysis is applicable depending on which capacity is implicated, we must determine if Evans's claim is properly analyzed as one challenging executive or legislative action. *Lewis*, 523 U.S. at 846 (citations omitted). Here, the challenged conduct is fairly characterized as executive because Evans's alleged injury arises not from any legislative act, but rather from the DOC's delay in seeking correction of the double credit on the administrative records reflecting his time served.[17] Because Evans's claim is directed at executive action, "the threshold question is whether the [governmental] behavior … is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis,* 523 U.S. at 847 n.8; *see also United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 399-400 (3d Cir. 2003) (acknowledging that "executive action violates substantive due process only when it shocks the conscience").

---

November 13, 2006 to March 13, 2011 [sic] violated Petitioner's 14th Amendment due process right not to be subject to unreasonable prejudicial delay in the allocation of time credit and the determination of the maximum service date of his sentence." (App. at 14-15.)

[17] The action in question is actually the result of a combination of steps taken by the DOC and the Lehigh Court, but what the Court did was spurred by the DOC's long delay in pressing for correction of the Court's improper application of credit for time served.

What is shocking to the conscience inevitably depends to a degree on whose conscience is being tested; so, to put it mildly, the standard has some give in it. That flexibility is manifested in the context-sensitivity of the standard. *See Lewis*, 523 U.S. at 847 (noting that the measure of what "shocks the conscience" is not precise); *Kaucher v. County of Bucks*, 455 F.3d 418, 426 (3d Cir. 2006) (noting that "[t]he question of whether a given action shocks the conscience has an elusive quality to it" (internal quotation marks and citation omitted)). What "shocks in one environment may not be so patently egregious in another." *Lewis*, 523 U.S. at 850. Therefore, "our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." *Id.*

As a general matter, it is governmental "conduct intended to injure" that is "most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849 (internal citations and quotation marks omitted). Conscience-shocking behavior may also arise in the form of injuries produced by deliberate indifference, although, where the conduct was not intentional, it is a "closer call[]." *Id.* "Negligently inflicted harm," by contrast, "is categorically beneath the threshold of constitutional due process" and will never be conscience shocking. *Id.* (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986)).

Moving past generalities, our analysis here is informed by reference to specific kinds of executive conduct that have previously been characterized as conscience-shocking or not. For example, in *United States v. Guevremont*, we held that the correction of an illegal sentence is permissible even if it

21

results in an increase in the sentence. 829 F.2d 423, 427-28 (3d Cir. 1987). We concluded that, absent judicial vindictiveness, an increase to make the sentence conform to the intention of the sentencing judge is constitutional. *Id.* at 428. *Guevremont* thus suggests that the correction to Evans's Commitment Sheet, which no one argues was motivated by judicial vindictiveness though it did result in a longer period of incarceration than Evans was led to anticipate, is not constitutionally infirm.

Cases in which inmates have been erroneously released and then re-incarcerated are also instructive as to whether the correction of time-served credit in Evans's case "shocks the conscience." In *Vega v. United States*, a prisoner, through no apparent fault of his own, was erroneously released and proceeded to live as a free man for approximately two years before he was arrested to serve the remainder of his sentence. 493 F.3d 310, 313 (3d Cir. 2007). We concluded that the mistaken release of a prisoner does not prevent re-incarceration if time remains on the prisoner's sentence.[18] *Id.* at 316. We further addressed the question of

---

[18] In fact, we found that point to be uncontroversial, noting that courts "generally agree upon the 'power of the government to recommit a prisoner who is released or discharged by mistake, where his sentence would not have expired if he had remained in confinement.'" *Vega*, 493 F.3d at 315-16 (quoting *White v. Pearlman*, 42 F.2d 788, 789 (10th Cir. 1930) (explaining that there is "no doubt" about the government's power to reincarcerate an erroneously released prisoner)); *see also Green v. Christiansen*, 732 F.2d 1397, 1399 (9th Cir. 1984) (holding that "a ministerial mistake does not necessarily excuse [an erroneously released prisoner]

22

whether due process required credit be given against Vega's prison sentence for the time he was at liberty. *Id.* at 314-15. Noting that several courts had decided that "a relatively high degree of culpability is required to shock the conscience in this context" and had declined to find due process violations under similar circumstances, we likewise determined that denying Vega credit for the time he was at liberty would not be a due process violation. *Id.* at 316-17 (internal quotation marks omitted). *Vega* demonstrates the high threshold for finding due process violations, showing that even where a prisoner had actually been released through no fault of his own, due process was not violated either by reincarcerating him or by denying him credit for his time at liberty.[19]

from serving the rest of his sentence" where "his sentence would not have expired had he remained in confinement").

[19] While we could "not find a constitutional basis upon which to anchor the rule of credit for time spent erroneously at liberty," we did hold that, under some circumstances, common law could provide a basis for a prisoner to receive credit for time at liberty. *Vega*, 493 F.3d at 317. In determining under what circumstances credit should be given, we explained that there were three interests at stake: a prisoner's right to serve a continuous sentence in a timely manner, the need to limit the arbitrary use of governmental power, and the government and societal interest in making sure a prisoner pays the debt he owes society. *Id.* at 318. Balancing those interests, we articulated the following test to be applied in cases where a prisoner was mistakenly released and then reincarcerated: a "prisoner is to receive credit for the time he was at liberty if he can bring forth facts indicating that he was released despite having unserved time remaining. The government may then respond to the petition by showing

Given those precedents and the amorphous character of the shock-the-conscience test, we do not believe the Commonwealth's actions meet that test here. The Commonwealth made a record-keeping mistake and then corrected it, eliminating the unlawful credit given to Evans on his Lehigh County sentence. The deep disappointment which that change no doubt engendered is certainly regrettable, but that does not make the correction conscience-shocking. Moreover, unlike the petitioners in the mistaken-release cases, Evans was still in jail at the time the error in his sentencing calculations was made. He had not yet tasted freedom. If the re-incarceration of already-released convicts does not shock the conscience, then correcting the improper start date of a sentence for a still-imprisoned convict ought not.

We do not utterly reject that there might be a "temporal limit" on a court's ability to correct a sentencing problem. *See Baker v. Barbo,* 177 F.3d 149, 157-59 (3d Cir. 1999) (denying petition for writ of habeas corpus after concluding that petitioner's due process rights were not violated because the government had the right to appeal petitioner's sentence, which fell below the statutorily required minimum, and petitioner's expectation of release "could not have reached that 'temporal limit' whatever it may be" that would limit the ability of a court to correct such an illegal

---

that, either, the imprisoning sovereign was not negligent, or vicariously negligent, or that the prisoner, in any way, affirmatively effectuated his release or prevented his re-apprehension." *Id.* at 323.

sentence).[20]    However, "[a] defendant … does not automatically acquire a vested interest in a shorter, but incorrect sentence.  It is only in an extreme case that a later upward revision of a sentence is so unfair that it is inconsistent with the fundamental notions of fairness found in the due process clause."  *United States v. Davis*, 112 F.3d 118, 123 (3d Cir. 1997).  This is not such a case.  It is well-established that a prisoner cannot escape punishment simply because the court committed an error in passing sentence.

---

[20] In *Baker*, the habeas petitioner was convicted of a crime that, under a recent statutory amendment, carried a mandatory minimum sentence of 25 years to life imprisonment with 25 years of parole ineligibility.  177 F.3d at 152.  Mistakenly, the trial court sentenced Baker to a term of 11 years of parole ineligibility.  *Id.*  Baker appealed his sentence on other grounds and New Jersey cross-appealed seeking the imposition of the 25 years parole ineligibility as required by statute.  *Id.*  The trial court granted New Jersey's cross appeal, which Baker challenged in a habeas petition alleging that sufficient time had passed since the imposition of the original sentence so as to strip the trial court of its ability to correct the sentence. *Id.* at 158.  We denied relief because: 1) "Baker's reasonable expectations could not have reached that 'temporal limit'" because the State sought to correct his sentence less than two years after its imposition and any expectation he did have could not have been final because his case was still on appeal;  2) Baker lacked "a substantial enough expectation of release"; 3) Baker's own appeal prevented his sentence from being "invested with finality"; and 4) the State's persuasive argument that, absent the correction, Baker would avoid the statutory minimum sentence and thus thwart the legislative process.  *Id.*

*United States v. Busic*, 639 F.2d 940, 946 (3d Cir. 1981) (citing *Bozza v. United States*, 330 U.S. 160, 166 (1947)). Neither should one escape punishment when the error at issue is not in the sentence itself but only in the record keeping associated with the sentence.

While the passage of time may be a factor in determining whether a substantive due process violation has occurred, our passing references, in dicta, to a temporal limit cannot be construed on this record to prevent the correction of an administrative mistake so that a lawful sentence can be served. Evans has presented no evidence to suggest that the DOC's delay was anything more culpable than negligence or that the correction of his sentence lacked a sound basis. *Cf. Hawkins v Freeman*, 195 F.3d 732, 746 (4th Cir. 1999) ("To declare the Parole Commission's decision so egregious and outrageous as to shock the contemporary conscience … , we would have to believe that it was infected or driven by something much worse -more blameworthy- than mere negligence, or lack of proper compassion, or sense of fairness, or than might invoke common law principles of estoppel or fair criminal procedure to hold the state to its error." (internal quotation marks omitted)). There is ample room for complaint about what happened here, but there is nothing "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience" and hence constitute a substantive due process violation. *Lewis,* 523 U.S. at 847 n.8.

### 2.     *Procedural Due Process*

Procedural due process governs the manner in which the government may infringe upon an individual's life,

26

liberty, or property. Prisoners are not completely deprived of the protections of the Due Process Clause simply because they are prisoners. Procedural protections must be afforded to them before they are stripped of the rights they still retain while incarcerated. *See Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) (finding that a prisoner must be provided due process before the revocation of "good time" credit for misconduct).

In analyzing a procedural due process claim, we must first "determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." *Newman v. Beard*, 617 F.3d 775, 782 (3d Cir. 2010) (internal quotation marks and citation omitted). Although the interests protected by procedural due process are much broader than those protected by substantive due process, *Bell v. Ohio State Univ.*, 351 F.3d 240, 249-50 (6th Cir. 2003), if there is no constitutionally protected interest, our inquiry stops. If, however, we "determine that the interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it." *Newman*, 617 F.3d at 783 (internal quotation marks and citation omitted).

Evans does not contend that his life or property is at issue. The question is whether he has a constitutionally protected liberty interest at stake. As previously noted, Evans's claimed interest was not defined with particularity, but it seems clear that the idea being pursued is that, in being systematically misled as to his true maximum release date, Evans had a legitimate expectation of being released on a particular date and his expectation matured into a constitutionally protected liberty interest.

According to our precedent, a prisoner holds a liberty interest triggering due process protection in two instances: when "state statutes and regulations create a liberty interest in freedom from restraint that imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," and when "severe changes in conditions of confinement amount to a grievous loss that should not be imposed without the opportunity for notice and an adequate hearing." *Renchenski v. Williams*, 622 F.3d 315, 325 (3d Cir. 2010) (internal quotation marks and citation omitted). We have characterized the first as a "so-called state-created liberty interest" and the second as a "so-called independent due process liberty interest." *Id.*

### a) State Created Liberty Interest

We are unable to discern a state-created liberty interest here. Evans entered a plea of *nolo contendre* to three counts of rape in the first degree. At the sentencing hearing, the Lehigh Court imposed the following sentence:

> That you undergo imprisonment for a period of not less than 10 years no more than 20 years … [a]nd credit be given you as required by law for all time spent in custody as a result of these criminal charges for which your sentence is being imposed … [that] [s]entence shall run concurrent with any sentence imposed in Northampton County…[and t]hat you will be placed on probation for a period of 20 years under the supervision of the Pennsylvania Board of Probation and Parole.

(App. at 133.)  The sentence itself is entirely lawful,[21] though the record keeping associated with it was in error.  As has been discussed, the initial Commitment Sheet wrongly credited Evans for presentence time that had already been applied to another sentence.  That improper application of credit gave Evans an artificially early start date to his sentence, which led to the miscalculation of his release date.  Later – unfortunately, much later – the court issued a corrected Commitment Sheet, which reflected the proper start date of his sentence.[22]  That correction necessarily resulted in

---

[21] By specifically stating that credit for time spent in custody be given "as required by law," the sentence recognizes that it could only operate within the bounds of Pennsylvania law, which would afford Evans credit for time served that had not already been applied to the earlier rendered Northampton County sentence.  That is also reflected by the R & R's recommendation, which the District Court seemed to adopt, that the amendment of the Commitment Sheet which indicated an unlawful application of credit for time served did not alter Evans's sentence.  The parties do not dispute that holding.

[22] In Pennsylvania, if no appeal has been taken, a court may "modify or rescind any order within 30 days after its entry." *Commonwealth v. Klein*, 781 A.2d 1133, 1135 (Pa. 2001) (citing 42 Pa. Cons. Stat. Ann. § 5505).  However, the court retains the "inherent powers to amend its records, to correct mistakes of the clerk or other officer of the court, inadvertencies of counsel, or supply defects or omissions in the record, even after the lapse" of thirty days.  *Id.* (internal quotation marks and citations omitted).  Moreover, even if one were to construe the Commitment Sheet as a sentence, a

a later release date, but it did not amend his sentence beyond the ten to twenty years which he was always required to serve. Evans was not stripped of any state-created liberty interest because state law never entitled him to be released on the date reflected on the initial Commitment Sheet. Evans can point to no statutory language limiting the power of the Commonwealth to correct the credit. There is no regulation to support the double application of his presentence credit because such an application is indisputably illegal in Pennsylvania.

The Supreme Court's decision in *Jago v. Van Curen*, 454 U.S. 14 (1981) counsels against any finding of a state created liberty interest here. The Court specifically addressed whether an inmate's pre-release expectation of freedom was a liberty interest deserving procedural due process protections. *Id.* at 16-17. The inmate had received a communication from the Parole Board indicating that he was to be released on parole. *Id.* at 15. Before he was paroled, however, he received notice that his parole was being withdrawn because the Parole Board had received information that he had been untruthful throughout his evaluation for parole. *Id.* The inmate filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of Ohio. *Id.* at 16. That court held that state law was unambiguous and that the inmate had no protectable interest in a release earlier

"sentencing court can *sua sponte*, correct an illegal sentence originally imposed, even after the defendant has begun serving the original sentence." *Commonwealth v. Santone*, 757 A.2d 963, 966 (Pa. Super. Ct. 2000) (quoting *Commonwealth v. Quinlan*, 639 A.2d 1235, 1239 (Pa. Super. Ct. 1994)).

30

than his actual release date. *Id.* The United States Court of Appeals for the Sixth Circuit reversed the district court, holding that, because the inmate had been notified that the Parole Board was ordering release, he had "a legitimate expectation that his early release would be effected" and that that expectation was a protectable liberty interest. *Id.* at 17. The Supreme Court in turn reversed the Sixth Circuit and held that, although the inmate had suffered a grievous loss upon the rescission of his parole, he did not have a protectable liberty interest in his anticipated parole. *Id.* at 17-18.

If there is no protected liberty interest in anticipated parole, we think it stands to reason that there is likewise no protected liberty interest in the expectation of release on an erroneously calculated release date.[23] Indeed, Jago faced much more severe consequences from the state's change in position on parole than Evans did from the correction of his Commitment Sheet. Jago was promised parole from a maximum sentence of 100 years, so he effectively went from

---

[23] *Jago* is factually distinguishable from Evans's case in at least two respects. First, Jago contributed to the demise of his freedom – he lied in both his parole interview and in his parole plan. *Id.* at 15. Evans, on the other hand, was blameless in the inappropriate application of the double credit and engaged in no behavior to put that credit in peril. Second, Jago's pre-release expectation of freedom lasted at most a relatively brief two and a half months, while Evans was misinformed as to his maximum release date for over eleven years. These distinctions do not, however, detract from the basic point concerning a constitutionally protected liberty interest.

31

imminent release to life in prison. *Jago*, 454 U.S. at 14. In contrast, Evans was facing approximately four years more than the Commitment Sheet had led him to believe.

Moreover, the freedom that Jago was trying to claim was consistent with state law, while Evans's claim is not. That is, there is nothing in the Supreme Court's opinion to suggest that the parole statute pursuant to which Jago was to be released was somehow contrary to Ohio law, but Evans's claim to be released four years earlier than allowed by his sentence is plainly contrary to Pennsylvania law. In addition, Evans and his counsel were present when the Lehigh Court announced that Evans was only to receive credit for time served "as required by law." The Supreme Court's conclusion that there was no liberty interest deserving of procedural due process protection in Jago's effort to be released from incarceration on legally proper parole undermines any argument that Evans has a constitutionally protected liberty interest in being released contrary to Pennsylvania law. Therefore, if Evans has any liberty interest at all in an artificially early release date, it is not state-created.

### b) *Independent Due Process Liberty*

It follows that any liberty interest Evans can claim must be of the "independent due process liberty interest" variety. The question, then, is whether the correction of a Commitment Sheet, eleven years after it was initially issued, amounted to a severe alteration in the conditions of Evans's incarceration such that due process protections were required. *See Renchenski*, 622 F.3d at 325 (concluding that a prisoner's liberty interest can be violated when severe changes in confinement conditions amount to a grievous loss and are

32

made without notice and a hearing). The answer is straightforward: while the administrative correction increased the period he was confined beyond what he had expected, it did not at all change the conditions under which he was confined.

Severe changes in conditions of confinement include, for example, forced administration of antipsychotic medication, *Washington v. Harper*, 494 U.S. 210, 221-222 (1990), or involuntary transfer to a mental hospital, *Vitek v. Jones*, 445 U.S. 480, 492 (1980), or, for a prisoner not convicted of a sex offense, forced participation in sex-offender therapy, *Renchenski*, 622 F.3d at 326. Again, there is no indication that anything changed relating to Evans's conditions of confinement, let alone anything of a magnitude comparable to the aforementioned examples. Time is of course important, and we do not minimize the magnitude of the record keeping mistake and communication blunders that have brought the case to us, but time is a feature of a sentence of incarceration, not in itself a condition of confinement, and the passage of time in this case had no effect on the conditions Evans was required to endure.

In short, because Evans lacks a constitutionally protected interest in his expectation of release based on the misapplied credit for time served, no procedural due process violation could have occurred.

## IV. Conclusion

For the foregoing reasons we conclude that the learned District Judge's order granting habeas relief must be reversed and the case remanded with instruction to deny Evans's

33

petition. We recognize that, since Evans's correct release date has already come and gone as of March 14, 2011, the practical effect of denying habeas relief is at this juncture uncertain, but we leave it to authorities in Pennsylvania to determine in the first instance whether Evans should remain on probation or be re-incarcerated.