NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1328
_____

BRIAN SKILES,
Appellant

v.

CITY OF READING; THOMAS J. MCMAHON, Mayor City of Reading, In His
Individual and Official Capacity;
BRAD REINHART, Code Administrator, City of Reading, In His Individual and Official
Capacity;
WILLIAM FRYMORE, Code Enforcement Officer City of Reading, In His Official
Capacity;
MICHELLE MAYFIELD, Code Enforcement Department, City of Reading, In Her
Official Capacity;
JAMES V. SANOCKI, Health Inspector, City of Reading Codes Enforcement Division,
Property Maintenance Unit,
In His Individual and Official Capacity; FRED YOURKAVITCH, Plumbing Inspector,
City of Reading Codes Enforcement Division, Building/Trades Unit, In His Individual
and Official Capacity;
STEVE DUNKLE, Building Inspector, City of Reading Codes Enforcement Division,
Building/Trades Unit, In His Individual and Official Capacity; MICHELLE MAYFIELD,
Legal Specialist City of Reading Department of Law,
In Her Individual and Official Capacity
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 10-cv-02270)
District Judge: Honorable Lawrence F. Stengel
_____

Submitted Under Third Circuit LAR 34.1(a)
September 22, 2011
_____

Before: FISHER, HARDIMAN, and GREENAWAY, JR., *Circuit Judges*.

(Opinion Filed: October 27, 2011)
_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

Brian Skiles ("Skiles") appeals the District Court's January 7, 2011 Order dismissing, with prejudice, his Amended Complaint against the City of Reading (the "City") and certain of its governmental officials (collectively, the "City Defendants"),[1] pursuant to Federal Rule of Civil Procedure 12(b)(6). The Amended Complaint alleged that the City Defendants violated his constitutional rights through the improper enforcement of the City's zoning, housing, and health regulations applicable to his residential and commercial properties. Skiles contends that the District Court applied an improper heightened standard to determine the merits of his substantive due process claim and otherwise failed to consider his well-pled factual allegations. For the reasons that follow, we will affirm the District Court's Order.

## I. **BACKGROUND**

Because we write primarily for the benefit of the parties, we recount only the essential facts.

_____

[1] The City Defendants named in the Amended Complaint are: the City, City Mayor Thomas McMahon, City Code Administrator Brad Reinhart, City Code Enforcement Officer William Frymoyer, City Assistant Solicitor Michelle Mayfield, Esq., City Health Inspector James Sanocki, City Building Inspector Steve Dunkle, and City Plumbing Inspector Fred Yourkavitch. According to the City Defendants, although named in the Amended Complaint, Mr. Yourkavitch died prior to the initiation of the lawsuit, and is no longer a party to this action, as service was never perfected on his estate.

Skiles owns multiple residential rental properties throughout the City and one commercial property—the "Scarab" bar and restaurant that is known as "Daddy's Night Club"—located in the City at 724 Franklin Street. Beginning in 2006, Mayor McMahon began implementation of a policy called "Downtown 20/20," designed to "establish a unified vision for improving the quality of life in Greater Reading." (App. 11.) The objective of the policy was to reduce the number of rental properties and boarding houses and to revitalize the City's commercial center.

Skiles alleged that the City Defendants sought to destroy the economic viability of his residential and commercial properties through their enforcement of various zoning, residential, and health regulations. Skiles alludes to two instances proving that the policy was inimical to his interest. First, Skiles points to an exchange in May 2008 in which the City Defendants "arbitrarily" changed the zoning approval for one of his residential properties, reducing the number of permissible parking spaces from sixteen to eight.[2] (App. 14.) The second instance occurred a month later, when the City Defendants allegedly misrepresented to two potential buyers of Skiles's residential properties that the properties were zoned for single families when, in fact, they were zoned as multi-family dwellings.

In February 2009, the City Defendants "arbitrarily and unilaterally" sought to redesignate the zoning and housing classifications for several of Skiles's residential properties. (App. 13.) Skiles claimed that despite Assistant Solicitor Mayfield's promise in an April 2009 letter to correct the improper redesignations, the requisite corrections

_____

[2] The zoning permit was eventually corrected to allow for sixteen parking spaces.

were never made. Skiles does not allege, however, that he complied with the prerequisites to the issuance of new permits that Assistant Solicitor Mayfield identified in her letter.[3] Moreover, Skiles acknowledged that he was not the sole target of the City Defendants' efforts to redesignate the zoning and housing classifications for rental properties, as other residential property owners were issued incorrect housing rental permits.

Skiles also alleged that the City Defendants sought to shut down his business, Daddy's Night Club. He maintained that it was widely known that Daddy's Night Club entertained a homosexual clientele. As such, the City Defendants sought to close Daddy's Night Club under the guise of regulatory violations based on the City Defendants' animus towards homosexuals. Since 1982, Skiles has held the title to the property and has operated the business. From 2006-2008, Jose Perez ("Perez"), a business associate of Skiles, was named on the commercial lease for Daddy's Night Club. Both the 2006 and 2007 health permits for the business were held in Perez's name. In March 2007, the zoning permit for Daddy's Night Club was transferred to Perez. Skiles never received an application in 2008 to renew the annual health permit for Daddy's Night Club, as he had in previous years. On May 14, 2008, Skiles attempted to pay for and obtain the health permit at the City's Code Enforcement Office. The office refused to issue the health permit and notified Skiles that Daddy's Night Club would be closed as

---

[3] Although Skiles did not attach the April 2009 letter as an exhibit to his Amended Complaint, his reliance upon the letter allows us to consider it, as the City Defendants attached the letter as an exhibit to their motion to dismiss. See Miller v. Clinton County, 544 F.3d 542, 550 (3d Cir. 2008).

4

of that day. Skiles maintained that neither he nor Perez had any prior notice that Daddy's Night Club was subject to closure due to violations of City regulations, though the 2007 health permit for Daddy's Night Club expired on December 31, 2007.

Skiles alleged that the first notice he received came by letter two weeks after the City closed Daddy's Night Club, informing him that the business was closed for failure to obtain a health permit. Skiles also was notified that he had to obtain a valid zoning permit for Daddy's Night Club. In July 2008, Skiles transferred the zoning permit for Daddy's Night Club from Perez back to his name. A month later, Skiles received a detailed letter outlining all of the regulatory violations identified at Daddy's Night Club and an edict that the violations had to be corrected before a health permit could issue. Skiles rectified the health violations and obtained a health permit for Daddy's Night Club, allowing him to reopen the business, in December 2009.

Skiles's federal lawsuit asserted three causes of action: (1) violation of his First Amendment right to freedom of association, pursuant to 42 U.S.C. § 1983; (2) violation of his Fourteenth Amendment due process rights, pursuant to 42 U.S.C. § 1983; and (3) conspiracy to violate his First and Fourteenth Amendment rights, pursuant to 42 U.S.C. §§ 1983 and 1985. The District Court granted the City Defendants' Motion to Dismiss the Amended Complaint, holding that Skiles could not establish a constitutional violation.[4]

---

[4] Skiles does not raise any arguments in his opening brief on appeal regarding the District Court's dismissal of his First Amendment freedom of association claim. This claim is waived. See Gonzalez v. AMR, 549 F.3d 219, 225 (3d Cir. 2008) (arguments not raised on appeal are waived).

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction over Skiles's claims, pursuant to 28 U.S.C. §§ 1331 and 1343. We have jurisdiction, pursuant to 28 U.S.C. § 1291, to review the District Court's final order.

We review a district court's order granting a motion to dismiss de novo. Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007). A Rule 12(b)(6) motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, ---, 129 S. Ct. 1937, 1949 (2009). A plaintiff is required, by Federal Rule of Civil Procedure 8(a)(2), to provide the "grounds of his entitle[ment] to relief [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation and internal quotation marks omitted; second alteration added). Like the district court, "[w]e accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in [the plaintiff's] favor." Capogrosso v. Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (quoting McGovern v. City of Philadelphia, 554 F.3d 114, 115 (3d Cir. 2009)).

We review a district court's order dismissing a complaint with prejudice for an abuse of discretion. United States ex rel. Willis v. United Health Grp., Inc., --- F.3d ----, 2011 WL 2573380, at *4 (3d Cir. June 30, 2011).

6

## III. ANALYSIS

To state a Fourteenth Amendment substantive due process claim pursuant to 42 U.S.C. § 1983, a plaintiff must first establish that, as a threshold matter, he has a protected constitutional interest at issue.[5] See McCurdy v. Dodd, 352 F.3d 820, 825-26 (3d Cir. 2003) (recognizing that § 1983 protects only the deprivation of an individual's constitutional rights). Assuming that this threshold is met, a plaintiff must prove that government employees engaged in conduct that "shocks the conscience." County of Sacramento v. Lewis, 523 U.S. 833, 846-47 (1998); United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 399-400 (3d Cir. 2003). This standard reflects the cornerstone of substantive due process that values "protection of the individual against arbitrary action of government." Lewis, 523 U.S. at 845 (quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974)). As a result, this conscience-shocking standard will be satisfied for "only the most egregious official conduct." Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 285 (3d Cir. 2004) (citations and internal quotation marks omitted).

Governmental conduct that is purposefully injurious is most likely to be indicative of conduct that "shocks the conscience." Evans v. Sec'y Pa. Dep't of Corrs., 645 F.3d 650, 660 (3d Cir. 2011); see also Eichenlaub, 385 F.3d at 286 (recognizing that allegations of corruption and self-dealing would "shock the conscience"). "The exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case." Miller v. City of Philadelphia, 174 F.3d 368, 375

---

[5] The parties do not dispute that Skiles has a constitutionally protected interest in his residential and commercial land.

(3d Cir. 1999). In the zoning and land use context, the "shocks-the-conscience" standard is "designed to avoid converting federal courts into super zoning tribunals." Eichenlaub, 385 F.3d at 285.

Skiles argues that the District Court improperly categorized this action as a land-use dispute and then applied a heightened land-use version of the conscience-shocking standard. We disagree. The District Court correctly recognized that only governmental conduct that "shocks the conscience" will rise to the level of a substantive due process violation. We have never recognized a heightened standard applicable to those substantive due process claims arising in the land-use context. See id. ("The District Court properly held . . . that whether a zoning official's actions or inactions violate due process is determined by utilizing a 'shocks the conscience' test."). Indeed, we have merely recognized that land-use decisions "are matters of local concern, and such disputes should not be transformed into substantive due process claims based only on allegations that government officials acted with 'improper' motives." United Artists, 316 F.3d at 402. That land-use decisions are not matters for federal courts to address, absent conduct that "shocks the conscience," in no way alters, and certainly does not heighten, this substantive due process standard.

But regardless of whether this lawsuit bears the hallmarks of a traditional land-use dispute, taking into account all of Skiles's well-pled allegations, we agree with the District Court that Skiles's substantive due process claim cannot survive a motion to dismiss. Skiles alleged that the City Defendants improperly redesignated the zoning and housing classifications for his residential property. As Skiles acknowledged, the City

8

Defendants corrected certain erroneous designations and, in any event, other residential property owners received similar treatment. These allegations simply do not rise to the level of conduct that "shocks the conscience." Moreover, Mayor McMahon instituted a policy designed to revitalize the City's rental properties—a legitimate governmental interest—that belies Skiles's claim of unfair treatment. See Nicholas v. Pa. State Univ., 227 F.3d 133, 142 (3d Cir. 2000).

Skiles's factual assertions are equally insufficient as a matter of law with respect to Daddy's Night Club. Though Skiles claimed that the City Defendants targeted Daddy's Night Club based on personal animus towards its homosexual patrons, Skiles's only evidentiary support for this statement is that City Plumbing Inspector Yourkavitch allegedly referred to Skiles as a "fagot" [sic] during a 2006 inspection of Daddy's Night Club. (App. 19.) Even accepting the truth of this factual allegation, it falls woefully short of demonstrating that the City Defendants' treatment of Daddy's Night Club "shocks the conscience." Although the City Defendants closed Daddy's Night Club due to zoning and health code violations, Skiles was able to reopen his business once the violations were rectified. If the City Defendants had been so intent on furthering their discriminatory goal by eradicating Daddy's Night Club, they would not have allowed the business to reopen once the regulatory violations were corrected.

Assuming the truth of Skiles's factual averments, Skiles is, at best, an aggrieved property owner, which is insufficient to sustain a substantive due process claim.[6] As we

---

[6] Following the Supreme Court's decisions in Twombly and Iqbal, a plaintiff need only demonstrate that the factual averments in the complaint state a plausible, rather than

9

have acknowledged, it is not the role of federal courts to provide a remedy for merely aggrieved land owners. See Eichenlaub, 385 F.3d at 285. The conscience-shocking standard demands more.

Because we will affirm the District Court's dismissal of Skiles's substantive due process claim, it follows a fortiori that Skiles cannot succeed on his claim alleging that the City Defendants conspired to violate his civil rights. Accordingly, the District Court also did not err in dismissing the conspiracy count of Skiles's Amended Complaint.[7]

## IV. CONCLUSION

For the foregoing reasons, we will affirm the District Court's January 7, 2011 Order.

---

probable, claim for relief. Skiles's contention that the District Court failed to accept his well-pled factual allegations and instead applied an improper probability standard is not correct. The District Court made clear that Skiles could not survive a motion to dismiss, even assuming the truth of his factual allegations. Further, Skiles acknowledges that the District Court recognized that it must apply the plausibility standard. (Appellant's Br. at 24.)

[7] Skiles argues that, at a minimum, the District Court erred in dismissing his suit without offering him an opportunity to further amend his Amended Complaint. While it is true that a district court ordinarily should not dismiss a civil rights suit for failure to state a claim before affording the plaintiff an opportunity to amend the complaint, such opportunity is not required where amendment would be futile. Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007). Skiles already has amended the Complaint once, and there is nothing in the record to suggest that allowing him to further amend would be anything but futile.